CITY OF CEDAR RAPIDS, appellant, v. ANN COX et al., appellees.

No. 50188.

(Reported in 108 N.W.2d 253)

MARCH 7, 1961.

REHEARING DENIED MAY 2, 1961.

William M. Dallas and C. W. Garberson, both of Cedar Rapids, for appellant.

Wisdom, Sullivan & Golden, of Des Moines, and Ernest F. Pence, James E. Bromwell, John K. Von Lackum, Jr., O. W. Lawrence and W. W. Crissman, all of Cedar Rapids, for appellees cross-appellants.

SNELL, J.—Plaintiff, City of Cedar Rapids, brought this action in district court pursuant to section 362.26 of the Code for annexation of between 12 and 13 square miles of unincorporated territory adjacent to the city. The trial court denied annexation and the city appealed. A cross-appeal by defendants tenders jurisdictional and constitutional questions.

I. The facts are not in material dispute. The dispute involves the premise from which the facts should be considered and of course the conclusions to be drawn therefrom.

Although subsequently repeated, we deem it appropriate to say in the beginning that neither the trial court nor this court has any discretion as to what should or should not be annexed. The Legislature has not, and could not, under the Constitution delegate to courts the power to determine whether the proposed annexation is sound or unsound, good or bad. If

the conditions prescribed by the Legislature have been met, the court must order annexation. If the conditions so prescribed have not been met, the court cannot order annexation.

II. Section 362.26, paragraphs 1 to 5 inclusive, of the Code, outline in detail the several steps necessary and preliminary to an action in court seeking annexation and the matters to be set forth in the petition. The trial court found that these conditions precedent had been met, and this finding is not an issue here.

Paragraph 6 provides: "If the court finds that there is an affirmative showing that the municipal corporation is capable of extending into such territory substantial municipal services and benefits not theretofore enjoyed by such territory, so that the proposed annexation will not result merely in increasing the revenue from taxation of such municipal corporation * * *, the court shall decree the annexation."

The question in the trial court and here is whether the city made an affirmative showing of its capability under the limitations required by the statute.

The trial court found, and with this finding we agree, that Cedar Rapids, with a population over 90,000, is one of Iowa's finest cities. In population it is increasing. It is favored with substantial and diversified industries and is attracting additional enterprises.

III. Thirty-two years ago territory south of the then city limits was annexed. City water and sanitary sewer facilities were not made available, and the territory is largely undeveloped. At the time of trial an $800,000 sewer facility, known as Prairie Creek Interceptor System, was nearing completion. Its capacity is sufficient to handle the requirements of that part of the present city it was designed to serve and the territory sought to be annexed. A previously existing handicap to the development of the southern part of the city has thus been removed. This undeveloped territory in the southern part of the city is referred to by defendants in resisting the city's attempt to annex more territory to the south. This argument is pertinent to the question of desirability of present annexation but it does not determine capability of the city.

IV. As originally instituted, the annexation proceedings involved about twelve and one-half square miles. The greater part of the area was south of the city; a smaller part was to the west. At the time of trial relatively small parts of the original area had been annexed by voluntary proceedings, leaving 7810 acres still involved.

The County Auditor's Plats show that there were approximately 1400 owners of real estate within the original area. There were originally 1389 defendants to this action with 502 added later. It was estimated that there are 928 families living within the territory exclusive of those in trailer courts, and 100 families living in trailer courts, making a total of over 1000 families with an estimated population of about 3500. Two hundred eighteen families live in a platted housing development named Lincoln Way Village; a smaller number in Worthington Acres. From the size and location of the various tracts of real estate involved, it is obvious that most of the people live on small plats or acreages around the perimeter of the city.

The trial court found that over 85% of the present area is unplatted land used for agricultural purposes. The issue is not solved by the use of this or other figures alone. The result of computations depends on the premise from which the problem is approached.

It is not for us to say how many acres must be included in a tract to constitute a farm. For municipal taxation purposes, however, the Legislature has set ten acres as the dividing line. Section 404.15 of the Code exempts tracts of over ten acres used for agricultural or horticultural purposes from city taxes except one and one-fourth mill for street purposes. Using ten acres as the dividing line, there are in the area sought to be annexed 68 tracts of over ten acres with a total acreage of 4952 acres and an assessed valuation of slightly less than $342,000. There are nearly 900 tracts of ten acres or less, with a total acreage of 2858 acres and an assessed valuation of over $2,700,000. The assessed valuation of all real estate in the area is over $7,900,000. Less than one tenth of the people live on tracts of over ten acres.

Percentages depend on whether we are figuring people,

total acres, size of tracts, assessed value of the land alone or assessed value of all real estate.

V. At this point in connection with the mention of people, areas and services it is interesting to note the witnesses called by defendants, even though mention here is otherwise premature. Twenty-one witnesses testified for defendants. There were nine farmers, three engineers, one manager and one employee of a power company, one municipal consultant, a statistician, a housing developer, the chairman of the county zoning commission, the sheriff, a blacksmith, and the Ely fire chief.

The nine farmers operated farms varying in size from 45 to 343 acres within the territory. All had electric power, private water and sewer facilities, adequate roads, fire department service from neighboring town volunteer departments and no police or sanitary problems. All were satisfied with present facilities, and each said he had no need for any service offered by the city. None expressed any great alarm at the prospect of annexation, although brief mention was made of the use of barbed wire and guns for hunting that might contravene the city ordinance.

According to the figures shown in the county financial report, defendants' Exhibit 6, farmers with more than ten acres would have their real-estate taxes reduced by incorporation. Their county tax would be reduced from 19.976 mills to 7.462 mills and their added city tax would be limited to one and one-fourth mill.

In the light of section 404.15 of the Code limiting the city tax on farm land, the fact that 85% of the territory, as found by the trial court, is farm land is of little, if any, importance. Statutory procedure for annexation by cities has varied at times. Succeeding legislatures have obviously contemplated the annexation of farm land but since the Sixteenth General Assembly in 1876 have protected farm land against excessive city taxation. In the light of such legislative policy existing for many years, the fact that a substantial part of the territory sought to be annexed is farm land is not very persuasive for either plaintiff or defendants.

The substance of the testimony of the other witnesses for

defendants was that there is no need for any of the services to be offered by the city and no benefits to be derived therefrom.

Taxes upon industrial installations and housing developments within the area would be substantially increased.

Dr. Thomas H. Reed, a municipal consultant of long experience and nation-wide reputation in his field, testified for defendants. He testified that "annexation has long been and still is the principal means of territorial expansion of the city. As a matter of fact, the right of a city to annex under certain circumstances is vital to municipal expansion. On the other hand, there are both good and bad annexations." After expressing a preference for a special court to pass upon the necessity and expediency of annexation (a procedure not authorized in Iowa), Doctor Reed stated his opinion "that this annexation is a bad annexation. It belongs in that category because it is excessive in size and premature in timing because it brings into the city a piece of territory, primarily agricultural in character —by far the greater portion of it—and a territory that is as a whole unripe for urbanization." In his opinion, the city "will not be capable of extending the water and sewer services through the area within a reasonable limit of time." In cross-examination the witness admitted that the extension of the services would be possible but unadvisable.

If we were vested with discretionary power in fixing public policy, Doctor Reed's opinion would be entitled to great weight. We are not, however, determining policy and most of the considerations prompting Doctor Reed's opinion are not found in our statute.

VI. Across the railroad track to the south of the present city limits is an electric generating plant owned by Central Iowa Power Cooperative and operated by Iowa Electric Light and Power Company. It is the largest industrial enterprise in the territory sought to be annexed. It had an estimated assessed valuation for 1960 of $5,634,221. The increased tax liability of this property in the event of annexation would be substantial.

Thirty of the thirty-seven employees operating the plant live in Cedar Rapids. Water for purposes within the plant is drawn directly from and is returned to the Cedar River. Inside

fire hoses are connected to this private water system but the outside fire hydrants will fit no hose connections in Iowa except those from Cedar Rapids and Marion, the threads being six per inch rather than the standard seven and one-half threads per inch. Whether or not this generating plant would use city water, if made available, would depend upon the cost.

About one-fourth mile south of the present city limits and extending southward about one-half mile is Lincoln Way Village, a housing development, with a water supply furnished by the developer and private septic tanks for sewage disposal. A Third Addition is to be developed with sewage to be emptied into a five-acre sewage lagoon. The use of this "waste stabilization pond" has been approved by the State Department of Health subject to a number of conditions and on a temporary basis and with the understanding that it will be abandoned when a connection to the Cedar Rapids Sewer System becomes available at a reasonable distance. .

A smaller housing development is located in the southeastern portion of the territory sought to be annexed.

The price of land in the territory sought to be annexed appears to be advancing. The land for the First and Second Additions to Lincoln Way Village was bought six years ago at $500 to $600 per acre, but the price for the land in the Third Addition was $1000 an acre.

Land in the extreme southern part of the present city limits, formerly used as an airport, was purchased by the Chamber of Commerce for $1600 per acre.

An offer of $2500 per acre was made and refused for other land in the southern part of the city. It is obvious that land in and near the southern part of the city has substantial value and development potential.

The trial court specifically found, and there is ample evidence to support the finding, that the city is capable of extending its fire department service, its police department service and its garbage collecting service into the territory sought to be annexed. It has been the policy of the city to install sanitary sewer service and city water service as needed with a part of the cost either assessed against the property

to be served or paid on a voluntary basis by the property owners asking for the service. The trial court found, and this finding is supported by the record, that the city is capable of extending sanitary sewer service and city water service into the territory sought to be annexed within a reasonable time upon the same basis as to parts of the present city. The city has ample sewer and water reservoir capacity to furnish such service. Whether or not such a program would be financially feasible or financially attractive is an entirely different matter.

VII. Although the size of the record and the vigor of counsel in this case rather refute the idea, the statute on annexation is clear as to the granting and withholding of power relative thereto. Proceedings are instituted by the city council. Notice must be given and a hearing held. Persons opposed may object but they cannot reject. When the proposal is submitted at an election, only the voters of the city or town may vote. Residents in the territory sought to be annexed do not vote on the proposal and their preference is not determined. If the proceedings are regular and the proposal is approved by the voters in the election, there remains for the court only the narrow question of fact outlined in the statute.

VIII. An affirmative showing is required. This means that the city has the burden of proof to establish the facts required. A plaintiff is charged with the burden of sustaining allegations necessarily pleaded. This proposition hardly needs supporting citations, but see Clapp v. Cunningham, 50 Iowa 307, and Gaston v. Finch, 246 Iowa 1360, 72 N.W.2d 507.

IX. In a clear and able ruling on a motion to dismiss, the trial court said:

"The immediate predecessor to the statute now under consideration was held to be unconstitutional (Sec. 362.26, Code of 1946) because it left to the court the determination of the question of the desirability of the annexation. In the Riverdale case, 244 Iowa 423, on 436, it was held that:

" 'What is desirable is not a question of fact that can be judicially determined. It is a question of policy or public interest exercisable by the Legislature alone. Under this statute

the court must say: it is desirable that the city limits be or not be extended. This is no true finding of fact. * * * This is a delegation of unlimited power in the courts to determine whether property shall be annexed or not and hence the statute is unconstitutional.' (page 441)

"The present statute was designed to provide a valid means for annexation, which would not be subject to the objections contained in the 1946 statute. The 1953 statute, here under consideration, attempts an entirely different approach, and provides for judicial determination of a proposition which, on its face, appears to call for judicial determination of facts, as distinguished from a determination of desirability or undesirability, convenience, necessity or other questions of policy or public interest which are not the subject of delegation by the legislature. * * *

"The petition alleges that the plaintiff, City of Cedar Rapids, is capable of extending into the territory proposed to be annexed, the following which are designated as 'substantial municipal services and benefits' not theretofore enjoyed, to-wit:

"A. Fire protection, or fire fighting service. b. Police protection, or service of the police department. c. Street construction, improvement and maintenance. d. Snow and ice removal from streets and alleys. e. Sanitary sewer service. f. Garbage disposal service. g. Other utilities, being (1) furnishing of filtered water for industrial, commercial and domestic purposes, (2) privilege of use of natural gas under rates fixed by a franchise, and (3) privilege of use of electricity under rates fixed by a franchise, and (4) street lighting.

"It further alleges that the proposed annexation is sought, not merely for the purpose of increasing revenue from taxation but, for normal expansion.

"Thus, it is necessary to determine whether the term 'substantial municipal services and benefits' embodies items which have a definite meaning * * *.

"The statute does not define the term. It assumes that the term has a definite meaning. While perhaps the inclusion of a definition would have been desirable, nevertheless there

958

can be little doubt of what the Legislature meant in using the term. * * *

■ "It can hardly be said that there is any uncertainty as to what is meant by 'substantial etc.' There can be no question raised that a full time, fully equipped modern fire department maintained by a city to render fire fighting service to the area within the municipality is a substantial municipal service and benefit. Likewise the maintenance by the city of a fully equipped, full time police department which furnishes police protection within its boundary falls within the category. So does municipal water works, with source of water and capacity of water filtration plant sufficient to provide water for the industrial, commercial and domestic purposes within the municipality, fall within the meaning of substantial municipal service and benefit. Other services, those designated and others not alleged in the petition, fall unquestionably within the scope of the term used by the Legislature.

■ "In interpreting a statute, as in other of its functions, the court cannot, and is not required, to close its eyes to matters of common knowledge. It is said that 'the Court should at least know what everybody else knows.' Conrad Modern Trial Evidence, Sec. 983, Vol. 2, p. 187. And that observation is applicable to the construction of a statute. The services alleged in the petition clearly fall within the classification 'substantial municipal services and benefits.' * * *.

"Nor does the term 'not theretofore enjoyed' interject the element of discretion into the statute. That term obviously means not theretofore available in the area, and therefore presents a factual question."

We approve and adopt these words of the trial court.

We do not agree with the trial court as to the conclusions to be drawn from the evidence subsequently introduced.

X. The problem is primarily factual and an exhaustive review of the authorities in the field of annexation is unnecessary. We will mention only a few of the Iowa pronouncements.

XI. By statutory designation the territory sought to be annexed is an urbanized area. Chapter 180, Acts of the Fifty-

seventh General Assembly, now a part of section 362.1 of the Code, provides:

"All territory within three (3) miles of the corporate limits, as the same now exist or may hereafter be established, of any city having a population of fifteen thousand (15,000) or more is hereby declared to be an urbanized area. No territory within said urbanized area shall hereafter be incorporated as a city or town, and the district court shall have no jurisdiction to take any action upon a petition to incorporate a municipality within said area."

The purpose of this statute is to protect rather than restrict cities in their normal growth and control of adjoining territory.

"It is evident that the legislature considered the restriction of the normal growth of the cities to be undesirable; the enactment of chapter 180 demonstrates that. If permitted, this course of action might well result in a slow strangulation of the cities. We need not speculate on the motives of those who attempt to incorporate these lesser municipalities. We know the legislature disapproved their efforts." In re Incorporation of Town of Avon Lake, 249 Iowa 1112, on 1119, 88 N.W.2d 784, 788.

XII. "The power of the legislature to create or enlarge boundaries of municipalities does not depend upon consent of the inhabitants." City of Cedar Rapids v. Cox, 250 Iowa 457, on 461, 93 N.W.2d 216, 218.

"Our court has upheld the power of the legislature to provide for extension of municipal boundaries without the assent of the inhabitants of either area." City of Des Moines v. Lampart, 248 Iowa 1032, on 1036, 82 N.W.2d 720, 722.

City of Cedar Rapids v. Cox, supra, quotes with approval (page 461 of 250 Iowa) from Hunter v. City of Pittsburgh, 207 U. S. 161, 179, 28 S. Ct. 40, 46, 52 L. Ed. 151, 159: " 'Although the inhabitants and property owners may, by such changes suffer inconvenience, and their property may be lessened in value by the burden of increased taxation, or for any other reason, they have no right * * * in the unaltered or continued existence of the corporation or its powers, and there is nothing

960

in the Federal Constitution which protects them from these injurious consequences.' "

 XIII. Under our statute property may not be annexed for the sole purpose of increasing the city's tax revenue. No court could be so naive as to think that this proceeding was prompted for the sole purpose of rendering service. The possibility of increased tax revenue is a tempting prize but the fact that in the event of annexation the city's increased revenue may exceed its increased expense will not alone defeat annexation. Annexation will not result merely in increasing the revenue from taxation.

It has been said that our tax structure, like Topsy in *Uncle Tom's Cabin*, "just growed" and that unfairness prevails but judicial decisions should not be based on the shifting of a tax burden, or the court's opinion as to the fairness thereof.

 XIV. Paragraph 6 of section 362.26 "now requires the court to determine not whether the city can, but whether there is an affirmative showing that the city is capable of extending into such territory substantial municipal services and benefits not theretofore enjoyed." These findings are factual requirements. The words "capable", "substantial" and "benefits" have various meanings, "depending on the context in which used. But as used here the fact which the court is required to find is clear. Was there an 'affirmative showing' that plaintiff-city was capable of bringing to the adjoining platted, but unincorporated, community 'substantial municipal services and benefits.' That leaves the court no discretion. It requires a finding of fact that requires no explanation." City of Des Moines v. Lampart, supra, 248 Iowa on pages 1036 and 1037.

The court is "not required to determine how capable plaintiff must be, nor how substantial must be the municipal services and benefits furnished—only whether there was an 'affirmative showing.' That was surely a factual requirement within the law." City of Des Moines v. Lampart, supra, on page 1038.

XV. Reference to the statute on severance and the cases decided thereunder is of little help. The provisions of the severance statute, section 362.32, and the duties of the court thereunder are not the same as in an annexation case. The severance

statute provides that the court may find "that such territory, or any part thereof," shall be severed. It also provides for a trial de novo and the entry of a decree "in accordance with the very right of the matter." With the exception of one case not in point here, the cases under the severance statute were decided prior to the change in the annexation statute and prior to the Riverdale case, 244 Iowa 423, 57 N.W.2d 63, limiting under the Constitution the power of the court.

XVI. Defendants argue vigorously that the situation is changed by the voluntary incorporation of parts of the original area. We do not agree. The removal of part of the area might be germane to the question of advisability or the city's need for more territory but it has no bearing on the city's capability.

There is nothing in the statute requiring that a need for municipal services be shown. The words "municipal services" are not synonymous with "individual needs." Police, fire, water, street and sanitary departments render a service even though an individual resident may feel no need therefor and may never call for or use the service.

XVII. Defendants-appellees cross-appeal and tender two issues:

1. Whether the court lost jurisdiction of the case when the city permitted voluntary annexation of areas in the territory subsequent to the commencement of those proceedings, and

2. Whether section 362.26 is unconstitutional because it violates the "due process" clause and "equal protection" clause of the Constitution of the United States.

After the commencement of the annexation proceedings, certain of the territory was annexed to the city upon the voluntary petition of the owners and resolution by the city council. Defendants argue that this constituted such a change in the territory involved as to deprive the court of jurisdiction.

In discussing this proposition the trial court said:

"The issue * * * is based upon the contention that inasmuch as the court cannot decree annexation of less than the whole proposed area, this action must fail because a part of the pro-

posed area is already a part of the plaintiff city and therefore is not subject to a decree of annexation.

"Defendants' contention, however, disregards one vital factor. It appears that the annexation of the part of the area, by voluntary petition of the property owners thereof, was after the commencement of this proceeding. At sometime, not shown, after the city council had taken the first procedural legislative step these owners concluded to accelerate the annexation of their real estate. The question is, what was the effect thereof upon this proceeding?

"State ex rel. Mercer vs. The Incorporated Town of Crestwood, supra [248 Iowa 627, 80 N.W.2d 489 and 81 N.W.2d 452], established the proposition that adoption of a resolution for publication of a notice of a public meeting to consider annexation is the first procedural legislative step and that it vests jurisdiction to complete the procedure.

"Upon the filing of the petition in equity, as provided in Sec. 362.26(5) Code of 1954, the jurisdiction of the district court, when acquired, is a further step in the legislative procedure and continues the jurisdiction theretofore acquired. It is not a separate proceeding distinct from the preceding proceedings, but a succeeding part thereof. The jurisdiction was not abrogated by voluntary petition for annexation of a part, and the city council's acceptance thereof.

"It has not been suggested that the rights of the owners of the remainder of the real estate proposed for annexation were, or would be, prejudiced by this voluntary annexation. If annexation of the proposed area should be decreed, the latter owners will be in the same position as if voluntary annexation had not been inaugurated and the entire area originally proposed for annexation will be a part of the city. If annexation should not be decreed it is no concern of the latter (owners of the remaining real estate), that a part thereof became a part of the city by their own voluntary action."

We approve and adopt this language of the trial court. The voluntary annexation of part of the proposed area after the commencement of this proceeding did not deprive the court of jurisdiction and is immaterial to the issues in this action.

XVIII. Defendants-appellees and cross-appellants urge that section 362.26 of the Code is unconstitutional and void because it can result in the unreasonable extension of municipal boundaries, which would be taking of property without due process, in violation of the 14th Amendment to the Constitution of the United States.

It is definitely established that the enlargement of cities by annexation of additional territory belongs exclusively to the State, and the Federal Constitution has no control over the method by which a state legislature provides for effectuating annexation.

In Rogers v. The City of Burlington, 70 U. S. (3 Wall.) 654, 663, 18 L. Ed. 79, 82, the Supreme Court of the United States said: "Municipal corporations are created by the legislature, and they derive *all* their powers from the source of their creation; and those powers are at all times subject to the control of the legislature."

In Hunter v. City of Pittsburgh, 207 U. S. 161, 178, 28 S. Ct. 40, 46, 52 L. Ed. 151, 159, the Supreme Court of the United States said: "Municipal corporations are political subdivisions of the State, created as convenient agencies for exercising such of the governmental powers of the State as may be intrusted to them. * * * The State, therefore, at its pleasure may * * * expand or contract the territorial area * * *. In all these respects *the State is supreme* and its legislative body, conforming its action to the State Constitution, may do as it will, *unrestrained by any provision of the Constitution of the United States.*"

XIX. The cross-appellants also urge that the statute is invalid and unconstitutional for the reason that it was adopted by a nonrepresentative Legislature contrary to Article IV, section 4, of the Constitution of the United States and the due process and equal protection clauses of the 14th Amendment to the Constitution of the United States.

The problems of the legislative apportionment and reapportionment have been, and are being, vigorously debated in the political and legislative field. Extensive judicial comments on this subject would only add to the confusion.

964

While the need for immediate reapportionment of our Legislature is being vigorously demanded and generally admitted as long past due, such arguments or facts do not afford a basis for the court to enter fields beyond judicial jurisdiction. The State Constitution vests in the legislative branch of the government the law-making function, including the making of rules for the representative apportionment of the assembly itself. If the judicial branch of government could by decree invalidate legislative enactments because of the failure of the Legislature to reapportion itself, chaos would result. We have no intention of attempting any such wholesale destruction of our statutory law.

The Iowa Constitution specifically places the responsibility of reapportionment of the Legislature upon the Legislature itself, and provides methods for implementing that function. It is not for the courts to say that constitutional procedures do not protect the citizens. The laws enacted by the duly elected legislators must be upheld unless the law itself violates the constitutional guarantees. A state court cannot adjudicate that the State Constitution does not protect the citizens of the state.

Without expressing any opinion as to whether the annexation is desirable or undesirable, good or bad, or as to the public policy involved in the statute, we find that the city has made an affirmative showing that it is capable of extending into the territory sought to be annexed substantial municipal services and benefits not theretofore enjoyed by such territory. We further find that the proposed annexation will not result merely in increasing the revenue from taxation of the city.

We further find that the court did not lose jurisdiction because of the voluntary annexation of a part of the territory.

We further find that the statute, and the procedure followed thereunder, is not in violation of the Constitution of the United States, nor of the State of Iowa.

The cause is reversed on plaintiff's appeal and is affirmed on defendants' appeal and is remanded to the district court for the entry of a decree of annexation as prayed.—Reversed and remanded.

All JUSTICES concur.