Town of Coralville, Iowa, appellant, v. Great Lakes Pipe Line Company, appellee.

No. 50052.

24

AUGUST 15, 1961.

REHEARING DENIED OCTOBER 17, 1961.

Clearman, Oehler & Barker, of Iowa City, for appellant.

D. C. Nolan, of Iowa City, and Evans, Duncan, Jones, Hughes & Riley, of Des Moines, for appellee.

SNELL, J.—Plaintiff, Town of Coralville, brought this action in district court under the provisions of section 362.26 of the Code for annexation of approximately 46.4 acres of land owned by defendant adjacent to and contiguous with the northern boundary of the town. It was stipulated that all the procedural requirements of subsections 1 through 4 inclusive of the governing statute had been fulfilled.

The trial court, in a decree entered prior to our pronouncement in City of Cedar Rapids v. Cox, 252 Iowa 948, 108 N.W.2d 253, denied annexation. The town appealed.

Town of Coralville is a municipal corporation. It had a population in 1950 of 950 and an estimated population at time of trial of about 2000. Geography and arterial highways somewhat limit the directions in which it can extend its corporate area.

Seven separate annexation proceedings describing tracts of various sizes around the perimeter of the town were commenced in 1957. All except the tract of defendant involved herein have been annexed. Other land east of defendant's land has been annexed by petition and resolution. Defendant, Great Lakes Pipe Line Company, owns land within the corporate limits just south of the north boundary. Defendant's property sought to be annexed is adjacent and immediately north. Defendant's property, both within and without the corporate limits, is operated together as one unit.

Defendant's property is referred to as a tank farm. It is a terminal, storage, distribution and forwarding station for liquid petroleum products. The property within the town, on which are located 17 storage tanks, has been so operated for many years. The 46.4 acres involved were acquired in 1951 and have been integrated into the operational unit. Located thereon are 10 storage tanks, a loading rack and office buildings. The entire area under use is enclosed by a cyclone fence topped by barbed wire, with entrance gates locked when not in use. The area is floodlighted and is never unattended.

Defendant has its own equipment for control of petroleum fires. Water is furnished to Coralville residents under a franchise with a privately owned system. Defendant, at its own expense under contract with the water company, made connection with the water system. Rates are controlled by the town through the franchise. Defendant's need for water is for convenience of its employees and not industrial. The town sanitary sewer is a collecting system connected, by contract, with the Iowa City Treatment Plant. Under contract and payment of a fee, defendant's buildings are connected to the sewer system. Defendant discharges no industrial waste into the system, and its sewer requirements are limited. There is no garbage. Such junk and refuse as accumulates is from that part of the terminal within the town limits.

Defendant's property is strictly industrial. No one lives thereon.

Defendant says it has no need for any municipal services not presently enjoyed and that the town has failed to make an

affirmative showing that it is capable of extending into such territory substantial municipal services and benefits not heretofore enjoyed.

I. We have recently emphasized that the wisdom of an annexation proposal is not within the scope of judicial discretion. We note, however, that here we find a situation that is unique, if not unusual. To one unfamiliar with the haphazard development of our taxing system, it would be hard to explain why an industrial installation operated as one unit by one owner, enclosed by a fence, should be partly in and partly outside the corporate limits. Obligations, rights, benefits and services depend upon the surveyor's line and not upon the integrated use of the property.

II. Coralville has doubled in population in ten years. Defendant's operation has also grown. Public services and utilities have kept pace. The fact that part of the services are furnished by contract or under franchise rather than by municipal ownership is immaterial. They are municipal services:

III. The town furnishes the usual and customary municipal services. It has a police force of three full-time employees, receiving the same pay as Iowa City officers in comparable grades. A police car fully equipped as an ambulance has two-way radio contact with Iowa City. The town has full radio coverage through the Iowa City station.

The town has a volunteer fire department with a chief, assistant chief and 26 men. The fire department has a new truck with a 500 gallon per minute, two stage pumper and carries 500 gallons of water with adequate hose. The town also houses, has the use of and furnishes personnel for the operation of a township fire truck. The town also has special foam equipment for fighting special types of fires such as petroleum fires.

The town has three full-time street employees operating a maintainer, two tractors and three trucks.

The town, at its own expense, has extended and expanded capacity of water mains so as to provide better service and adequate water pressure. The territory sought to be annexed is served by the town sewer system.

The town has a storm sewer system for drainage of surface water.

There is a Planning and Zoning Commission and a Recreation Commission with a full-time employee, a public park, a town hall, a clerk, a sanitation officer, an engineer, treasurer, and an attorney performing the usual services, and a franchise with the Iowa Electric Light and Power Company.

It appears clear that the town is capable of extending into the territory proposed to be annexed the usual and customary municipal services and benefits in the same manner and to the same extent as to the property presently within the corporate limits. It also appears that such services are substantial and are adequate for all ordinary needs of a community the size of Coralville, including the property sought to be annexed.

A street and highway maintenance problem of some consequence exists at present. Vehicles traveling to and from defendant's property traverse the town streets. First Avenue runs north and south past the eastern boundary of the area sought to be annexed. Property to the east of First Avenue is within the corporate limits, and the east half of First Avenue is accordingly a town street. Defendant's property sought to be annexed to the west of First Avenue is not now within the corporate limits, so the west half of First Avenue passes defendant's property as a county road. Entrance to defendant's property is through gates on First Avenue. The dividing line, being down the center of First Avenue, results in the west half of the road past defendant's property being a county road depending upon the county for maintenance and the east half away from defendant's property being a town street with responsibility for maintenance in the town. The administrative and maintenance problems incident to such divided responsibility are obvious. The proposed annexation would convert all of this street into a town street and place the responsibility for the maintenance thereof on the town.

IV. It appearing that plaintiff is capable of extending into the territory proposed to be annexed the usual municipal services and the same services rendered to the territory now within the corporate limits, the real issue involves the meaning of

"benefits not theretofore enjoyed * * *, so that the proposed annexation will not result merely in increasing the revenue from taxation."

Our most recent pronouncements in the field of municipal annexation are found in State ex rel. Mercer v. Incorporated Town of Crestwood, 248 Iowa 627, 80 N.W.2d 489, 81 N.W.2d 452; City of Des Moines v. Lampart, 248 Iowa 1032, 82 N.W.2d 720; and City of Cedar Rapids v. Cox, 252 Iowa 948, 108 N.W.2d 253.

In the Mercer case, supra, at pages 635, 636 of 248 Iowa, it is held that the functions of the court are restricted to the findings of fact concerning two matters: "First, '* * * that the municipal corporation is capable of extending into such territory substantial municipal services and benefits not theretofore enjoyed by such territory, so that the proposed annexation will not result merely in increasing the revenue from taxation of such municipal corporation.' Second, [the regularity of the proceedings] * * * [citation].

"The statute is so restrictive that no legislative function remains for action by the court. It has no discretion as to annexation, if the facts are in accordance with statute."

The Lampart case, supra, closes with these words: "The court was not required to determine *how* capable plaintiff must be, nor *how* substantial must be the municipal services and benefits furnished—only whether there was an 'affirmative showing.' That was surely a factual requirement within the law."

In the case at bar it affirmatively appears that the town is capable of extending into the territory proposed to be annexed municipal services, including fire fighting service, service of the police department, street construction and maintenance, sanitary sewer service, garbage disposal service and water and other utilities under rates fixed by franchise. These are all municipal services. The availability thereof to property within the limits of the corporation is beneficial and must be classified and considered as benefits within the meaning of the statute, City of Cedar Rapids v. Cox, supra.

V. Defendant, Great Lakes Pipe Line Company, vigorously alleges that it is presently enjoying all of such services

for which it has any need and there is nothing additional within the present capability of the town that would in any way be of benefit to defendant. In other words, the defendant says it neither wants nor needs any additional municipal services and benefits from the town.

The legislative intent that the desire of the voters and owners of property within territory sought to be annexed is immaterial is apparent from the fact that in annexation proceedings residents within the territory sought to be annexed have no right to vote. In the instant case no one lives within the territory and so there are no voters, but by analogy it is clear that what the owners prefer is not controlling.

■ VI. Here, by contract with the town, defendant has obtained water and sewer service. It has built a fence around its property. It has employees or a watchman on duty at all times to protect against thievery or vandalism. Because of the highly inflammable nature of the product handled, the defendant has installed for its own benefit special fire fighting equipment.

May an industrial installation by providing its own special services to suit its own special needs thus isolate itself from the partially surrounding municipality and stifle normal growth and municipal expansion by saying, "We have no need for what you offer"? We think not. The issue is the capability of the municipal corporation and not the need of the property owner.

To sustain the position of defendant would, for all practical purposes, destroy the effectiveness of the annexation statute by placing a veto power in the hands of the property owner.

■ The fact that the town has previously made available to defendant certain municipal services does not refute its position under the statute that it is capable of extending into the territory services not "theretofore enjoyed."

In argument defendant quotes a quotation we approved in the Cox case, supra (on page 958 of 252 Iowa): "* * * the term 'not theretofore enjoyed' * * * obviously means not theretofore available in the area * * *."

The town's water and sewer systems have been made available to defendant and are now enjoyed. The town's ability to

furnish and extend appears. Except through the town and franchises with the town these services are not available.

To say that the town fails to show capability to furnish services and benefits "not theretofore enjoyed" because defendant is already enjoying some of the town's services is like saying, "You can't invite me to dinner because I am already eating at your table."

The words quoted in the Cox case, supra, do not and should not support the conclusions sought by defendant.

VII. The fact that the territory is neither a residential nor a diversified business area and the fact that defendant says it never will be are not controlling. There is nothing in the statute, nor in our decisions, restricting annexation to multiple purpose territory.

There is nothing in the statute requiring the town to make an affirmative showing that the services and benefits offered are necessary to the territory sought to be annexed, nor is there anything in the statute that requires a showing of special benefit to a particular piece of property. Here we have general municipal services offered to the area the same as to the surrounding territory. These services must be considered to be benefits inuring to all property, regardless of a particular need or lack thereof at the moment. City of Cedar Rapids v. Cox, and City of Des Moines v. Lampart, both supra.

VIII. Annexation may not be for the sole purpose of increasing tax revenue. In the Cox case, supra, we said:

"No court could be so naive as to think that this proceeding was prompted for the sole purpose of rendering service. The possibility of increased tax revenue is a tempting prize but the fact that in the event of annexation the city's increased revenue may exceed its increased expense will not alone defeat annexation." (Page 960 of 252 Iowa.)

In any town or small city any appreciable broadening of the tax base will, of course, reduce the tax levy on other property. This is particularly true where we have a small town seeking to annex a valuable industrial improvement. There is nothing in the statute that the benefits must equal in value the additional tax revenue. The statute provides that there must be

a showing "so that the proposed annexation will not result *merely* in increasing the revenue from taxation." (Emphasis supplied.)

Webster's New International Dictionary defines the word "merely" as an adverb meaning purely; unmixedly; absolutely; entirely.

At the time of trial the tax levy on property within the corporate limits was 77.134 mills and on defendant's property just outside the corporate limits 65.550 mills. The taxable valuation of the property sought to be annexed was $766,451, and the evidence indicated that by including property sought to be annexed with the taxable property inside the town, the tax levy would be reduced to 72.718 mills. Simple arithmetic would indicate that by annexation defendant's taxes on the property annexed would be increased 7.168 mills and the other property in town, including defendant's property within the corporation, would enjoy a reduction in levy of 4.416 mills. While these figures are undoubtedly persuasive in the town's desire for, and defendant's objection to, annexation, they do not establish that increased revenue would be the sole or only, or even the principal, result of annexation. Part, at least, of the increased tax revenue would be required in furnishing municipal services and benefits. The maintenance of the street to provide access to defendant's property might be cited as one item of expense.

The hope of increased revenue from taxation may have been one of the motivating influences prompting this proceeding but annexation will not result merely in increasing tax revenue.

At the time of trial and decision of this case the trial court did not have our most recent pronouncement. What we there said leads to a different conclusion.

■ We find that plaintiff-town has made an affirmative showing that it is capable of extending into the territory sought to be annexed substantial municipal services and benefits not theretofore enjoyed by such territory, so that the proposed annexation will not result merely in increasing the revenue from taxation.

The cause is reversed and is remanded to the district court

32

for the entry of a decree of annexation as prayed.—Reversed and remanded.

All JUSTICES concur.