TOWN OF CLIVE, appellee, v. CLARK A. COLBY et al., appellants; CITY OF WINDSOR HEIGHTS, intervenor-appellant.

No. 50764.

(Reported in 121 N.W.2d 115 and 123 N.W.2d 331)

484

APRIL 9, 1963.

SUPPLEMENTAL OPINION AND REHEARING DENIED
SEPTEMBER 17, 1963.

Herrick, Langdon, Sandblom & Belin, of Des Moines, for appellant.

Joseph M. Coppola and Volney Diltz, both of Des Moines, for appellee.

Emmert, Lindgren, Eller & Miller and John J. Yeager, all of Des Moines, for intervenor-appellant.

STUART, J.—The incorporated Town of Clive, Polk County, Iowa, brought this action to annex a tract of about 67.2 acres lying between Clive and the City of Windsor Heights under the provisions of 362.26, 1958 Code of Iowa. This particular tract of ground is part of the former Town of Crestwood and has been involved in prior litigation. See State ex rel. Mercer v. Incorporated Town of Crestwood, 248 Iowa 627, 80 N.W.2d 489, 81 N.W.2d 452; and Incorporated Town of Windsor Heights v. Colby, 249 Iowa 802, 89 N.W.2d 157. That portion of the annexation territory which has been developed is part of the "Plaza Hills" development and is a residential area of brick homes costing between $30,000 and $40,000. The remainder of the Town of Crestwood and the Plaza Hills development has been annexed to Windsor Heights.

On December 9, 1957, while the last of the above cases was pending, the Town of Clive passed a resolution authorizing publication of notice of a meeting to consider a resolution of annexation as provided in section 362.26(1) of the Iowa Code. On April 21, 1958, residents of this territory filed a 100 percent petition for voluntary annexation to the City of Des Moines. At this time Crestwood was still a de facto corporation which was not dissolved until May 9, 1958. On the evening of May 9, 1958, the town council of Clive ordered publication of a notice similar to the one published December 9, 1957, and stated this

resolution "in no way alters, supersedes, or in any way affects" the previous resolution.

The Town of Clive proceeded under section 362.26. This lawsuit was filed in equity on July 29, 1958, following a vote of 62 to 6 by the residents of Clive in favor of annexation. The City of Des Moines filed a petition of intervention which was later dismissed upon its motion after another annexation proceedings, upon which the 100 percent application was contingent, failed. On March 14, 1960, a 100 percent application for voluntary annexation to the City of Windsor Heights was filed and assented to by the town council of Windsor Heights. On November 3, 1960, Windsor Heights intervened in the present action.

On May 8, 1962, the trial court in ruling upon an Application for Adjudication of Law Points held: (1) The Town of Crestwood was a de facto corporation from February 1, 1956, until May 9, 1958, at 3:59 p.m. (2) This territory was still part of the de facto corporation of Crestwood on April 21, 1958, and was not available for annexation to Des Moines by petition of 100 percent of the residents on that date. (3) The Town of Clive had exclusive jurisdiction over the annexation territory by virtue of its resolution of May 9, 1958, and the 100 percent petition for annexation to Windsor Heights was an attempt to intrude upon this exclusive jurisdiction. (4) The legality of the proceedings instituted by the Town of Clive can be attacked only by a separate action in quo warranto and is not being attacked in this case. (5) The exclusive jurisdiction of the Town of Clive over the annexation territory continues until the final determination of this case. (6) After 3:59 p.m. on May 9, 1958, the annexation territory was unincorporated and subject to annexation proceedings. The court also concluded on the record up to that point the plaintiff was not dilatory in completing the annexation. The petition of intervention of Windsor Heights was dismissed.

After hearing on the merits, the trial court concluded that Clive was capable of furnishing the annexation territory "substantial municipal services and benefits not heretofore enjoyed by such territory" and decreed that it be annexed to the Incorporated Town of Clive.

I. Defendants urge six propositions upon which they rely for reversal. We shall first discuss the proposition the plaintiff failed to prove by a preponderance of the evidence it "is capable of extending into such territory substantial municipal services and benefits not theretofore enjoyed by such territory". This is an ultimate fact which must be pleaded under the annexation statute 362.26, Code of Iowa. The statute also provides that the court must find plaintiff has made an affirmative showing on this allegation.

The burden of proof is upon the plaintiff to establish the allegations of its petition by a preponderance of the evidence. In this instance the burden of proving such allegation requires an affirmative showing that it is capable of furnishing "substantial municipal services and benefits not theretofore enjoyed". City of Cedar Rapids v. Cox (1961), 252 Iowa 948, 956, 108 N.W.2d 253; City of Des Moines v. Lampart, 248 Iowa 1032, 82 N.W.2d 720. This is strictly a question of fact. The trial court found plaintiff had made such an affirmative showing. We do not believe this finding is supported by the evidence.

The capabilities of the plaintiff to furnish municipal services must be determined on the conditions existing when the annexation proceedings were initiated. In most situations this would be of little importance, but in the instant case four years elapsed between the time proceedings were instituted and the trial on the merits. Plaintiff's case is based upon exclusive jurisdiction obtained May 9, 1958, by virtue of its resolution passed that date. The petition was filed July 29, 1958, setting forth the statutory allegations. Plaintiff cannot claim exclusive jurisdiction from May 9, 1958, and expect to prove its allegations by conditions which exist four years later. Such a holding would permit a municipality to tie up territory for extended periods of time while striving to attain the capabilities alleged in the petition. Although plaintiff offered evidence as to conditions at time of trial as well as in 1958, it does not argue the 1958 conditions should not govern.

Clive was incorporated in 1956 and in 1958 had a population of either 575 or 774. In 1958 University Avenue extension from the City of Des Moines was the only paved street in the

town. There were no streetlights. The city hall was a room in the mayor's residence which was rented to the town. The town was budgeted to its full capacity for streets, public safety and sanitation. Funds available for these purposes were: streets $1300, public safety $1900, sanitation $1000, road use fund for streets $3400, liquor profits $850 and agricultural land tax for streets $100.

The police department consisted of one officer employed at a salary of $100 per month who also operated a radio repair shop in his home. The police car was the mayor's personal station wagon for the use of which he was compensated. The mayor also did some police work.

The Town of Clive had no sewer system or fire department. Only 45 to 50 homes were served by a water system. The town water system was not commenced until December 1959 and water is now furnished under contract with the City of Des Moines. The town does not claim to have had natural gas service available. Clive has refused to accept responsibility for the payment for fire calls made in the town by the Windsor Heights fire department and informed the department it should look to the individuals for payment.

The only road access into the annexation territory from Clive was by a circuitous route exceeding one and one-half mile through the City of Windsor Heights.

Clive had a mayor's court in 1958 in which about 500 cases a year were disposed of. The town had a zoning ordinance and a comprehensive plan for community development. Street equipment consisted of a road grader, truck with snow removal blade and a tractor for mowing. The mayor was also in charge of street work and drove the grader himself at times. He did have additional help. There were regular council meetings. Electricity was furnished under franchise with Iowa Power & Light at Des Moines rates.

In 1958 the annexation area was a residential area of brick homes in the $30,000 to $40,000 class. The streets were paved and lighted. Water, gas, electricity and sewer were furnished by others than the Town of Clive. Some houses on Marilyn Drive were not on sewer at that time.

█ █ Plaintiff does not meet defendants' proposition discussed in this division head on. Its argument seems to assume that these facts constitute an affirmative showing that Clive is capable of extending substantial municipal services into the annexation territory and directs its attack against defendants' evidence tending to prove the wishes of the residents of the annexation territory, comparative facilities of Clive and Windsor Heights, and the desirability of annexation to Windsor Heights rather than Clive. It is correct in its contention that none of these factors is relevant or material to the issues in this case. We have held that annexation is a legislative function and that a statute which vests discretionary power in the courts to determine the advisability of annexation is an unconstitutional delegation of legislative authority. State ex rel. Klise v. Town of Riverdale, 244 Iowa 423, 57 N.W.2d 63. If we were to weigh the facts to determine the best interest of the parties, we would be legislating and acting unconstitutionally.

We say in City of Cedar Rapids v. Cox (1961), 252 Iowa 948, 950, 108 N.W.2d 253, 255: "* * * neither the trial court nor this court has any discretion as to what should or should not be annexed. The Legislature has not, and could not, under the Constitution delegate to courts the power to determine whether the proposed annexation is sound or unsound, good or bad. If the conditions prescribed by the Legislature have been met, the court must order annexation. If the conditions so prescribed have not been met, the court cannot order annexation."

Nor are the desires of the residents of the annexation territory a consideration. "When the proposal is submitted at an election, only the voters of the city or town may vote. Residents in the territory sought to be annexed do not vote on the proposal and their preference is not determined." Cedar Rapids v. Cox, supra, page 956.

These matters were no concern of the court and were not considered in this decision.

The statute involved was amended after the Riverdale case to eliminate any discretion in the courts. The statute now provides the legal steps and conditions with which the municipality

must comply in annexation proceedings. The court now is only "required to perform the judicial function of determining whether the law has been complied with." State ex rel. Klise v. Riverdale, supra. This does not mean that the courts are limited to an examination of the procedural matters to determine if all legal steps have been followed and all statutory matters properly pleaded. The courts are also specifically charged with the duty of reviewing the evidence and determining if it sustains the statutory allegations.

All cases decided since the Riverdale case have treated this issue as a fact question to be decided by the courts.

In the case of State ex rel. Mercer v. Crestwood, 248 Iowa 627, 635, 80 N.W.2d 489, 494, 81 N.W.2d 452, we say: "In annexation procedure the steps are carried out by action of town or city council and vote of the people, * * *. In each case there is a judicial function, but it is only fact finding and this is permissible. By taking such action the court does not invade the legislative field."

In the City of Des Moines v. Lampart, 248 Iowa 1032, 1036, 1037, 82 N.W.2d 720, 722, able counsel for plaintiff challenged the constitutionality of the present statute claiming the "flaw still lurks, due to the words 'capable', 'substantial' and 'benefits'." In answer to this argument we said:

"Paragraph 6 now requires the court to determine: 1. *Not* whether the city can, but whether 'there is an *affirmative showing* [italics supplied] that the [city] is capable of extending into such territory substantial municipal services and benefits not theretofore enjoyed * * *'; and 2. Whether all the 'proceedings and conditions precedent to annexation as required' by paragraphs 1 through 5 have been 'duly instituted and carried out.'

"We are not impressed with defendants' argument these are not factual requirements. Of course each word—'capable', 'substantial' and 'benefits'—has various meanings, depending on the context in which used. But as used here the *fact* which the court is required to find is clear. Was there an 'affirmative showing' that plaintiff-city was *capable* of bringing to the adjoining platted, but unincorporated, community '*substantial municipal* services and benefits.' That leaves the court no dis-

cretion. It requires a finding of fact that requires no explanation: Was there a substantial showing.

"It is carefully pointed out in the Riverdale opinion at page 429 of 244 Iowa, page 66 of 57 N.W.2d: 'The prohibition against the delegation to the courts of power of creation, enlargement and diminution of municipalities does not mean that the legislature cannot provide for some court function in the proceedings.' And that opinion (page 430) quotes from Denny v. Des Moines County, 143 Iowa 466, 472, 121 N.W. 1066, 1069: 'It is well settled in this state that the Legislature may provide for the exercise by a court of the power to judicially determine facts which are made the conditions on which authority may be exercised by officers to whom is delegated the exercise of legislative and executive power.' "

The court also states: "We cannot agree that the court would have any 'unlimited discretion' to decree annexation. Its function would be to determine as to the existence of the prescribed conditions precedent to annexation." (Page 1035)

In City of Cedar Rapids v. Cox, 252 Iowa 948, 108 N.W.2d 253, we recognized the question was primarily factual but differed with the conclusion reached by the trial court under the evidence introduced. (Page 958)

In Town of Coralville v. Great Lakes Pipe Line Co., 253 Iowa 23, 110 N.W.2d 375, we reviewed the evidence as to the municipal services offered by the Town of Coralville and found as a matter of fact that the town had made an affirmative showing of the necessary capabilities.

It is true in these cases annexation was decreed, but the decree was based upon the facts. The evidence in the instant case is not comparable to that in the case of Des Moines v. Lampart, 248 Iowa 1032, 82 N.W.2d 720; or Cedar Rapids v. Cox, 252 Iowa 948, 108 N.W.2d 253. It can hardly be argued that these large cities are not capable of extending substantial municipal services into adjoining areas. The record in the case of Town of Coralville v. Great Lakes Pipe Line Co. (1961), 253 Iowa 23, 110 N.W.2d 375, discloses the small town of Coralville had all the municipal services lacking in Clive even though the defendant professed no need for them.

██ Under this record we cannot say the Town of Clive is capable of furnishing substantial services to the annexation territory. This is not a matter of discretion but a finding of fact that is explained and supported by the record. If we were to hold under this record the Town of Clive was capable of furnishing substantial services, it is difficult to imagine a record on which the court could reach any other conclusion.

It had no sewer system, no town water system and no fire department. It was budgeted to full capacity to take care of the streets and safety of the public then within the corporation limits. If the term "substantial services or benefits" is to be given any of the interpretations placed upon it in the cases cited herein, plaintiff has failed to make an affirmative showing of any capability to furnish substantial services or benefits and we so hold.

██ II. Appellants also urged that plaintiff lost its right to exclusive jurisdiction in annexation matter by reason of excessive delay and failure to diligently pursue the annexation. While our holding in the foregoing division makes it unnecessary to determine this question in the instant case, the proceedings should be conducted with reasonable dispatch and completed within a reasonable time. As residents of areas subject to annexation have little to say about their fate, no municipality should have the right to tie up adjacent territory unless it is prepared to proceed diligently to annex the territory and extend the needed municipal services.

Other propositions urged by defendants need not be considered in view of our holding in Division I.

For the reasons set forth in Division I this case is hereby—Reversed.

All Justices concur except Moore, J., who takes no part.

### Supplemental Opinion

Stuart, J.—In their respective petitions for rehearing plaintiff, defendant and intervenor all agree the holdings in the original opinion should be extended to include a determination of the status of the 100 percent application for annexation to

Windsor Heights. Although the parties were not particularly helpful in supplying authorities, we agree that it is for the best interest of all concerned that this question be resolved at this time. We therefore supplement the opinion filed April 9, 1963, by adding the following division.

III. On March 14, 1960, while the instant case was pending, 100 percent of the residents of the annexation territory filed an application for voluntary annexation of the territory to the City of Windsor Heights which was assented to by resolution of the Town Council of Windsor Heights as provided in section 362.30, Code of Iowa. Windsor Heights intervened in the present action claiming Clive had not met the statutory requirements because it was not capable of extending substantial services into the territory and that it had an interest in the subject matter by virtue of the voluntary annexation proceedings. In ruling upon points of law, the trial court dismissed the petition of intervention on the grounds that Clive acquired exclusive jurisdiction of the territory by the resolution of May 9, 1958, and had the right to pursue this action to its final determination.

This holding is based upon prior decisions of this court. We said in State ex rel. Mercer v. Incorporated Town of Crestwood (1957), 248 Iowa 627, 632, 633, 80 N.W.2d 489, 492: "All parties agree as to the legal principle that in a conflict between annexation and incorporation, the proceeding first instituted has precedence. [Citations] * * * The great weight of authority in other states is that annexation proceedings and incorporation proceedings are legislative in character and the entity taking the first legislative step has exclusive jurisdiction to complete its procedure." (Citations) We reaffirm these statements. However, the instant case demands consideration of an additional factor not previously considered by this court.

In all prior Iowa cases the party who took first action apparently pursued its course to a successful conclusion. In the instant case we have held that Clive failed to make an affirmative showing of any capability to furnish substantial services or benefits. It therefore failed to meet the statutory requirements. It was permitted to pursue the regular procedure to conclusion without interference. The conclusion was adverse. This is the

first case in which we have been called upon to decide whether compliance with the statute is essential to the exclusive jurisdiction referred to in the foregoing authorities.

Clive claims the jurisdiction is exclusive until the final decree and that all action taken between the first step and the final decree is void and of no effect. Windsor Heights claims that compliance with the statute is jurisdictional and a failure to comply with the statute renders the proceedings void ab initio, and therefore the 100 percent application is the first legal proceeding.

We can determine this matter as all interested parties are before us. Clive does not claim the proceedings for the 100 percent application for annexation to Windsor Heights are defective but depend solely upon exclusive jurisdiction being in Clive.

Section 362.26 (5b), Code of Iowa, sets forth the annexation procedure instituted by Clive. It provides the petition shall contain "a statement of facts showing that the municipal corporation is capable of extending into such territory substantial municipal services and benefits * * *" and that if an affirmative showing is made of such capability the court shall decree annexation.

Therefore an affirmative showing is one of the statutory requirements and failure to make such showing is just as much a failure to comply with the statute as failure to properly publish notice or properly conduct the election. Surely it would not be claimed that these defects in the procedure would grant exclusive jurisdiction between the first step and the decision of the court. There would have been no jurisdiction from the beginning and the defective proceedings would have been no bar to subsequent action affecting this particular territory. We see no difference in the failure to make an affirmative showing of the required capabilities. Authorities examined on this proposition support our position.

In the case of Lorimor v. Town of Lorimor, 196 Iowa 774, 776, 195 N.W. 199, 200, we said the proceedings for severance of land from an incorporated town "being wholly statutory, the requirements, *in order to confer jurisdiction either of the sub-*

*ject matter or of the persons, must be complied with.* Estrem v. Town of Slater, 181 Iowa 920." (Emphasis supplied.)

An affirmative showing of capability of extending services is a statutory requirement and failure to meet this requirement, as well as any other provision of the statute, results in a failure to acquire jurisdiction.

The Wisconsin Supreme Court in In re Village of Brown Deer, 267 Wis. 481, 66 N.W.2d 333, in holding Milwaukee, which had first instituted annexation proceedings, lost exclusive jurisdiction by failing to proceed within a reasonable time, said:

"The posting of the annexation notices on December 30, 1952, was no bar to the proceedings for incorporation in view of the record presented."

It refused to consider the action of Milwaukee, the first to proceed, a bar to other proceedings in the interim between the first action and the decree holding exclusive jurisdiction had been lost.

State ex rel. Village of Orono v. Village of Long Lake (1956), 247 Minn. 264, 270, 77 N.W.2d 46, 50, is directly in point. Quo warranto proceedings were instituted challenging the validity of a purported annexation by Long Lake. Long Lake commenced proceedings September 24, 1954. Orono commenced incorporation proceedings October 7, 1954. The court recognized the rule "that the municipal authority which first institutes valid proceedings under the power granted by the statutes has the exclusive jurisdiction over the area in question."

However Orono contended "the Long Lake proceedings for annexation were not validly commenced and performed and that therefore even though they were commenced prior in time to the incorporation proceedings they do not have the exclusive jurisdiction over the lands in question." This is the contention made by Windsor Heights.

The Minnesota court held an amendment eliminating some of the land after signature rendered the petition void saying:

"It is therefore our opinion that this petition was ineffective and void and consequently that Long Lake Ordinance No. 45 passed pursuant to the petition is also void. *This determination means that the petition for incorporation and the subsequent*

*election have priority and jurisdiction over the lands included within Ordinance No. 45."* (Emphasis supplied.)

The majority rule is set forth in 2 McQuillin, Municipal Corporations (Third Ed.), section 7.22, as follows:

"A proceeding for the annexation of territory to a contiguous municipal corporation is ineffectual when instituted after the institution of a proceeding for the organization of the territory into a village or city, and while such proceeding is pending and undetermined. *However, annexation proceedings are not precluded where the pending incorporation proceedings do not comply with the statute, or are otherwise insufficient to deprive the annexing city of jurisdiction or authority to acquire the territory involved."* (Emphasis added.)

This principle is in accord with the public interest. We have stated herein that a city should not be permitted to tie up contiguous property by initiating annexation proceedings at a time when it cannot meet the statutory requirements in order to gain time to build up its capabilities. The capabilities are to be determined on the conditions that exist when annexation proceedings are initiated and they are to be conducted with reasonable dispatch. These principles would be circumvented if we were to hold the initiating party had exclusive jurisdiction until a decree finding the statutory requirements were not met.

Five years have passed since Clive first instituted proceedings in this case. Although we found it unnecessary to decide whether it lost exclusive jurisdiction by reason of the delay, it offers a graphic example of the problem created if exclusive jurisdiction were conferred upon the first party to act until a final decision was reached. It would still be an unincorporated area, offered as a prize to the winner of another "race to the courthouse." One such race is enough. A winner who has been disqualified by a decision of this court is not entitled to a fresh start. The race goes to the party which instituted the first valid proceeding and complied with the statute.

As Clive failed to meet the requirements of section 362.26, Code of Iowa, the proceedings were not valid or effective. It failed to acquire exclusive jurisdiction over the disputed territory. The application for voluntary annexation and its sub-

sequent approval by the Town Council of Windsor Heights had priority and jurisdiction over the disputed territory and we decree that said territory has been in and a part of the municipal corporation of Windsor Heights from and after the date of March 14, 1960.

Except as herein provided, the petitions of all parties for rehearing are hereby overruled.

All JUSTICES concur except MOORE, J., who takes no part.