James Patrick RYAN, Appellant,

v.

Harry C. TINSLEY, Warden of Colorado State Penitentiary, Appellee.

No. 7219.

United States Court of Appeals
Tenth Circuit.

April 22, 1963.

Rehearing Denied May 9, 1963.

they passed were not invalid because of the lack of a constitutional apportionment.

Gene T. Bonner, Oklahoma City, Okl. (Mosteller, Fellers, Andrews, Snider & Baggett, Oklahoma City, Okl., were with him on the brief), for appellant.

Appellant, James Patrick Ryan, filed a brief pro se.

John E. Bush, Asst. Atty. Gen. (Duke W. Dunbar, Atty. Gen., and Frank E. Hickey, Deputy Atty. Gen., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, and BREITENSTEIN and SETH, Circuit Judges.

**BREITENSTEIN, Circuit Judge.**

Appellant Ryan is a persistent petitioner for habeas corpus to obtain relief from a Colorado state court conviction.[1] He now asserts that for many years the districting of the State of Colorado for the election of members of both houses of the state legislature has violated both the state constitution and the Fourteenth Amendment to the United States Constitution. From this premise he argues that no Colorado court is empowered to hear his petition; that the court in which he was convicted had no jurisdiction over him; and that the statute under which he was convicted, the Colorado Habitual Criminal Act,[2] is unconstitutional.

The trial court assumed without deciding that the districting of the state for the election of legislators failed to satisfy federal and state constitutional requirements and held that, even though malapportioned, the legislatures that enacted the various pertinent statutes were empowered to act and the laws which

■■ Ryan does not claim to have presented to any state court the grounds now asserted for relief. This deliberate bypassing of the state courts is allegedly justified on the ground that Colorado now has no courts legally empowered to act. Appointed counsel in his brief and argument does not attack the power and authority of the Colorado courts and urges only the unconstitutionality of the Habitual Criminal Act. This position is vulnerable because, under Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837, a deliberate bypassing of state courts is a discretionary ground for denial of habeas corpus by the federal courts. We pass this point because in his pro se brief the petitioner asserts the unconstitutional creation and existence of the state courts. If the state has no court to which he can turn, the provisions of 28 U.S.C. § 2254 do not deprive him of federal habeas corpus.

No discussion of the Colorado constitutional and statutory provisions pertaining to the state's judicial system is necessary. Additionally, consideration of the constitutionality of the districting of the state for the election of members of the legislature is not now pertinent. The sole issue is one of law—whether statutes passed by an unconstitutionally apportioned legislature are constitutional. If they are, all the contentions of the petitioner fall by the wayside.

At all material times,[3] the Colorado constitution provided for a bicameral legislature made up of a senate with 35 members and a house with 65 members.[4] Members of each body were elected from legislatively created districts.[5] The leg-

---

1. The trial court in its memorandum opinion and order stated that the instant petition was the fourth that had been presented by Ryan. No appeals were taken from the denial of the first two. This court, without written opinion, affirmed the denial of the third petition. See case No. 6162, decided September 18, 1959.

2. Colo.Rev.Stat.Ann., §§ 39–13–1 to 39–13–3 (1953).

3. The Colorado constitutional provisions in point were amended by an initiated measure adopted by vote of the people on November 6, 1962.

4. Colo.Const. Art. V, § 46.

5. Ibid. § 47.

islature was required to "revise and adjust the apportionment for senators and representatives" after each federal census and after each intermediate 5-year period.[6] Reapportionment statutes were passed in 1913, 1933, and 1953.

An acceptance of the contentions of the petitioner would produce chaos. A presently unascertainable number of Colorado statutes would be nullified. Property rights would be jeopardized. The marital status of many individuals would be questionable. Tax statutes would be unenforceable. The prison gates would be thrown open. The maintenance of law and order would be imperilled. Government would exist in name only. A recognition of the consequences compels rejection of the arguments.

▮▮▮ The Colorado legislature, a body created by the state constitution, has de jure existence which is not destroyed by any failure to redistrict in accordance with the constitutional mandate.[7] The members of the various legislatures that enacted the laws now under attack were, so far as the record discloses, all elected in compliance with the then existing statutes. Accordingly they were de jure officers.

▮▮▮ Even if the districting statutes then in existence were to be held invalid, the offices, created by the state constitution, were de jure offices and the incumbents were, at the very least, de facto

members of the legislature, and their acts are as valid as the acts of de jure officers.[8]

Petitioner's reliance on Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178, is misplaced. In that case no de jure office existed. That decision recognizes that when an individual claiming a de jure office is in possession of the office, performing its duties, and asserting to be such officer under color of election or appointment, he is a de facto officer. Nothing in Baker v. Carr, 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663, intimates that a legislature elected from districts that are invidiously discriminatory in violation of the Fourteenth Amendment is without power to act.

Although the Colorado Supreme Court has not passed directly on the point in issue, we find support in its decision in In re Legislative Apportionment, Colo., 374 P.2d 66. In that case the claim was asserted that the Colorado legislature was not apportioned in compliance with the applicable federal and state constitutional provisions. Although the court did not reach the question of whether in fact an unconstitutional apportionment existed, the court assumed the power of the legislature to reapportion its membership. If the petitioner's contentions are to be accepted, a malapportioned legislature could not pass a valid act of reapportionment.

Affirmed.

6. Colo.Const. Art. V, § 45 reads: "The general assembly shall provide by law for an enumeration of the inhabitants of the state, in the year of our Lord 1885, and every tenth year thereafter; and at the session next following such enumeration, and also at the session next following an enumeration made by the authority of the United States, shall revise and adjust the apportionment for senators and representatives, on the basis of such enumeration according to ratios to be fixed by law."

7. See State v. Latham, 190 Kan. 411, 375 P.2d 788, 799–800, and cases there cited; and see City of Cedar Rapids v. Cox, 252

Iowa 948, 964, 108 N.W.2d 253, 262–263. Referring to the Cedar Rapids case, Mr. Justice Douglas, in his concurring opinion in Baker v. Carr, 369 U.S. 186, 250, 82 S.Ct. 691, 727, 7 L.Ed.2d 663 note 5, said: "The recent ruling by the Iowa Supreme Court that a legislature, though elected under an unfair apportionment scheme, is nonetheless a legislature empowered to act * * * is plainly correct."

8. Fruit v. Metropolitan School District of Winchester-White River Township, Randolph County, 241 Ind. 621, 172 N.E.2d 864, 865–866.