CITY OF CEDAR FALLS, appellee, v. GEORGE H. C. SIEGLAFF et al., appellants.

No. 52158.

July 14, 1966.

Kennedy, Kepford, Kelsen & White, of Waterloo, for appellants.

J. E. Jacobsen, of Cedar Falls, for appellee.

GARFIELD, C. J.—Forty-seven defendants owning 25 parcels of land with a total area of about 780 acres or 28.5 percent of the 4.3 square miles of unincorporated territory plaintiff City of Cedar Falls seeks to annex under section 362.26, Code, 1962, have appealed from the decree of annexation following trial in equity. The remaining defendants were in default.

The single proposition relied on for reversal is that plaintiff has wholly failed to show it is capable of extending into the affected territory substantial municipal services and benefits not theretofore enjoyed by such territory and the evidence overwhelmingly establishes the annexation is for the primary purpose of increasing plaintiff's revenue from taxation (see section 362.26, subsection 5, paragraphs *b* and *d*, and subsection 6). We cannot sustain the proposition.

No question is raised as to compliance by the city with the pertinent provisions of 362.26, subsections 1 through 4, as to

notice, adoption by the city council of the resolution, submission to the voters of the city of the proposition to annex the territory and adoption of the proposition by a majority of those voting, and also as to filing the petition in court containing the matters required by subsection 5, paragraphs *a* through *d*.

The proposed resolution for annexation was introduced January 7, 1964. Public hearing on the proposal was held February 10 when the resolution was adopted. The special election was held April 7. The petition in equity was filed June 11. Trial was in January 1965 and decree filed March 2.

The area to be annexed adjoins the city on the south. It is in the shape of an L with its broad base on the east side extending up to the north. The east and west limits of the area are extensions to the south of the existing east and west city limits. The proposed south city limits are a straight line between the south end of the proposed east and west limits. One hundred fifty to 200 people reside in the area.

The territory is primarily agricultural except for a cluster of homes on Cedar Heights Drive and in the John Deere experimental and research center of about 500 acres near the southeast corner of the territory. The area has ten sets of farm buildings, 22 family dwellings with appurtenances, a nursery, trailer court and trailers and other equipment of a small carnival in winter quarters. A defendant-appellant who has developed residential subdivisions testified the territory is a choice residential area but he feared lots therein might be so expensive it would be hard to find purchasers for them.

Cedar Falls is the home of State College of Iowa with about 5000 students at time of trial. It is one of Iowa's fastest growing cities. Its population in 1940 was about 9000, in 1950 about 14,000, in 1960 about 21,000 (a 50 percent gain in ten years), and about 24,000 at time of trial. The southeast part of the city has sustained the greatest growth over the past ten years and it is anticipated this growth will extend into the area in question. The college owns considerable land in the southwest part of the city that is not available for residences.

I. Section 362.26, subsection 6, requires a finding of "an affirmative showing that the municipal corporation is capable

of extending into such territory substantial municipal services and benefits not theretofore enjoyed by such territory, so that the proposed annexation will not result merely in increasing the revenue from taxation of such municipal corporation;" and a further finding by the court that all proceedings and conditions precedent to annexation as required by subsections 1 through 5 have been duly instituted and carried out. If these two findings are made "the court shall decree the annexation."

■ II. Since this is an equity case our review is de novo. Code section 624.4; Rules of Civil Procedure 267, 334. Especially when considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound by them. Authorities need not be cited for this. Rule 344(f)7, R. C. P. When we give weight to the trial court's findings we are not justified in disturbing them.

III. Each brief cites six decisions; five are Iowa cases in both briefs. They are, in the order they were filed: City of Des Moines v. Lampart, 248 Iowa 1032, 82 N.W.2d 720; City of Cedar Rapids v. Cox, 252 Iowa 948, 108 N.W.2d 253; Town of Coralville v. Great Lakes Pipe Line Co., 253 Iowa 23, 110 N.W.2d 375; Town of Clive v. Colby, 255 Iowa 483, 121 N.W.2d 115, 123 N.W.2d 331; Town of Grimes v. Adel Clay Products Co., 256 Iowa 145, 126 N.W.2d 270.

■ These precedents make it clear that annexation is a legislative function which cannot be delegated to the courts. The judicial function in cases like this is to make a factual determination as to whether the conditions prescribed by the legislature for annexation of territory have been met and, if it is found they have, to decree annexation, otherwise to deny it. We have no discretionary power to determine whether the proposal is good or bad, wise or unwise.

■ City of Des Moines v. Lampart, supra, at page 1038 of 248 Iowa, page 724 of 82 N.W.2d, contains this statement which has been repeated several times: "The court was not required to determine *how* capable plaintiff must be, nor *how* substantial must be the municipal services and benefits furnished—only whether there was an 'affirmative showing'" (emphasis not added).

City of Cedar Rapids v. Cox, supra, at pages 950, 951 of 252 Iowa, page 255 of 108 N.W.2d, makes this statement which later decisions repeat with approval: "The Legislature has not, and could not, under the Constitution delegate to courts the power to determine whether the proposed annexation is sound or unsound, good or bad. If the conditions prescribed by the Legislature have been met, the court must order annexation. If the conditions so prescribed have not been met, the court cannot order annexation."

The Cox opinion says of the statutory requirement that property may not be annexed for the sole purpose of increasing the city's tax revenue "the fact that in the event of annexation the city's increased revenue may exceed its increased expense will not alone defeat annexation" (page 960 of 252 Iowa, page 260 of 108 N.W.2d).

Town of Coralville v. Great Lakes Pipe Line Co., supra, at page 29 of 253 Iowa, page 379 of 110 N.W.2d observes, "The issue is the capability of the municipal corporation and not the need of the property owner."

Town of Clive v. Colby, supra, properly points out that the burden is upon the municipality to prove by a preponderance of the evidence it is capable of furnishing to the area sought to be annexed " 'substantial municipal services and benefits not theretofore enjoyed' " (page 487 of 255 Iowa, page 117 of 121 N.W.2d). To like effect is Town of Grimes, supra (at page 147 of 256 Iowa, page 272 of 126 N.W.2d).

A vital consideration in the Clive case, not present here, is that the question of capability of the municipality to furnish the services and benefits to the area was determined as of the time the annexation proceedings were initiated, not at the time of trial four years later.

In the first three of the precedents cited, supra, annexation was decreed; in the last two it was denied. In the Grimes case a town of 697 people with an area of 480 acres, at least 100 of which were undeveloped, sought to annex 9½ sections of terri-tory (12 times the then area of the town). In both these later cases the showing of the town's capability to furnish the municipal services and benefits was far from persuasive. It is clear the present case resembles the Des Moines, Cedar Rapids and

Coralville cases much more than it does the Clive and Grimes cases in which annexation was denied.

■ IV. There is ample evidence here that the city maintains a fully-equipped, well-trained fire department capable of providing immediate service to the area proposed to be annexed. In the last ten years the fire department has asked for help only once from the fire department of Waterloo, which adjoins Cedar Falls on the east, with about three times its population. An agreement for reciprocal assistance between the two fire departments has been in effect during this period. There is a like showing plaintiff maintains a fully-equipped, full-time, well-trained police department capable of providing immediate police protection for the area proposed for annexation. Likewise it is shown plaintiff's street department has adequate equipment and trained personnel immediately available for the improvement and maintenance of streets, including snow removal in the area.

The evidence supports the finding plaintiff can adequately treat and dispose of sewage from the annexation area. The city has a modern sewage disposal plant, approved by the state department of health, capable of serving 35,000 to 40,000 people. A good deal of trial time was devoted to the increased cost of caring for sewage from the area. Half to two thirds of it naturally drains to the southeast rather than toward the present city. It is common practice, however, to lift sewage from a lower level to a higher one by use of pumps. There are 20 to 30 lift stations for sewage in Waterloo.

It appears another sewage treatment plant may be needed if all the area is developed and the cost thereof would be about $450,000—the first "stage" would cost about $125,000. The city appears to be well able to finance such an improvement. Plaintiff is capable of extending storm sewers into the area as requested and needed. It pays part of the cost of storm sewers. "* * * it is not necessary that all services be extended forthwith" (citation). Town of Grimes v. Adel Clay Products Co., supra, 256 Iowa 145, 150, 126 N.W.2d 270, 273.

It is shown plaintiff regularly collects garbage with some of its six garbage trucks and buries it and is capable of pro-

viding immediate garbage collection service to the area. The city owns and operates its own gas, electric and water plants and facilities valued at about nine million dollars and they are sufficient so service can be extended to the area, including modern street lighting. Plaintiff has a planning and zoning commission and is prepared to extend its benefits, along with those from building regulations and inspection, to the new area.

The city also has a number of other services that would be immediately available to people of the area to be annexed, including use of city parks and riverfront, swimming pool and other recreation facilities, public library, hospital, milk inspection and other health services. Plaintiff has two cemeteries it maintains perpetually. Altogether we think plaintiff made quite a persuasive showing it is capable of extending into the territory to be annexed substantial municipal services and benefits such as a city usually furnishes.

Section 362.26, subsection 6, supra, provides that the services and benefits must not be "theretofore enjoyed by such territory." The trial court's finding plaintiff made an affirmative showing on this issue is well supported by the evidence notwithstanding the fact the area has received from other sources, to a limited extent, some of the services above referred to.

Like most large industrial plants, John Deere experimental farm and research center has provided itself with some of the services mentioned. It has its own fire brigade and equipment and a contract with the Waterloo fire department to provide fire-fighting service if needed. It buys electricity from a private utility and has its own gas, water and sewage disposal systems. There remain, however, several municipal services and benefits plaintiff is capable of extending to the John Deere property which it has not previously enjoyed.

It is significant John Deere does not object to the proposed annexation and a reversal is not justified because it has provided itself with some of the services plaintiff is capable of furnishing it. Town of Coralville v. Great Lakes Pipe Line Co., supra, 253 Iowa 23, 29, 110 N.W.2d 375, 379, fully supports the view just expressed.

The limited services previously furnished the area to be annexed other than to John Deere are for the most part

such as a county usually furnishes rural areas through its road supervisor, sheriff and county zoning commission. They can hardly be classed substantial municipal services and benefits. In any event there are several services and benefits plaintiff is capable of furnishing the entire area which it has not previously enjoyed. See Town of Coralville case, supra; also City of Cedar Rapids v. Cox, supra, 252 Iowa 948, 108 N.W.2d 253.

Section 362.26, subsection 6, supra, clearly implies, if it does not directly state, that an affirmative showing the municipality is capable of furnishing the area **substantial municipal** services and benefits not theretofore enjoyed warrants a finding the annexation will not result *merely* in increasing the municipality's revenue from taxation.

Of course any annexation of unincorporated territory will result in an increase of revenue from taxation which may or may not exceed the increased expense of the services. As stated in Division III hereof, the fact the increased revenue may exceed the increased expense will not alone defeat annexation. Town of Coralville case, supra.

We may observe that so long as much of the area to be annexed continues not to be laid off into lots of ten acres or less and to be occupied and used for agricultural purposes it is not taxable for any city purpose except not to exceed 1¼ mills per year for municipal street purposes. Code section 404.15. So it does not appear the annexation will result in any great increase of the city's revenue from taxation.

Upon consideration of all contentions argued we find insufficient ground for reversal.—Affirmed.

All JUSTICES concur.