CITY OF BETTENDORF, appellee, v. BEN J. ABELN et al., appellants.

No. 52541.

(Reported in 154 N.W.2d 836)

DECEMBER 12, 1967.

Doerr, Dower & Rehling, of Davenport, for appellants.

Albert J. Stafne, Jr. and Jack D. Gordon, both of Bettendorf, for appellee.

GARFIELD, C. J.—This is an action in equity to review pro-

ceedings by the City of Bettendorf to annex 4.26 square miles of allegedly adjoining territory which was unincorporated. The petition was filed against the owners of the property to be annexed, in compliance with section 362.26, subsections 4 and 5, Code 1962. Proceedings required by section 362.26, subsections 1, 2 and 3, preliminary to filing the petition were duly carried out. Voters of the city approved the annexation by a majority of virtually two to one.

Section 362.26, subsection 6, requires a finding by the district court of "an affirmative showing that the municipal corporation is capable of extending into such territory substantial municipal services and benefits not theretofore enjoyed by such territory, so that the proposed annexation will not result merely in increasing the revenue from taxation of such municipal corporation;" and a further finding by the court that all proceedings and conditions precedent to annexation as required by subsections 1 through 5 have been duly carried out. If these two findings are made "the court shall decree the annexation." City of Cedar Falls v. Sieglaff, 259 Iowa 263, 266, 144 N.W.2d 116, 118.

Following trial the court here found the affirmative showing of capability required by section 362.26, subsection 6, was made. No question was raised as to compliance with the other proceedings and conditions precedent to annexation as required by 362.26, subsections 1 through 5. The court therefore decreed annexation. In doing so, it held without merit defendants' contention the territory annexed did not adjoin plaintiff-city as required at the outset of section 362.26.

On this appeal defendants contend the city failed in its burden to affirmatively show it is capable of furnishing to the area to be annexed substantial municipal services and benefits not theretofore enjoyed, so the annexation will not result merely in increasing revenue from taxation. Defendants also assert the territory does not adjoin the city.

■ I. Since this is an equity case our review is de novo. Code section 624.4; Rules of Civil Procedure 267, 334. Especially when considering the credibility of witnesses we give weight to the fact findings of the trial court but are not bound by them. Authorities need not be cited for this. Rule 344-

(f)(7), R.C.P. When we give weight to the trial court's findings we are not justified in disturbing them.

II. Each side cites six Iowa cases on the disputed question whether the city made the affirmative showing it is capable of furnishing to the area the services and benefits referred to in 362.26, subsection 6. The most recent is City of Cedar Falls v. Sieglaff, supra, 259 Iowa 263 at page 266, 144 N.W.2d 116. The others are the five decisions cited, in the order they were filed, at page 118 of the Cedar Falls opinion.

After citing these five precedents the Cedar Falls case continues:

██ "These precedents make it clear that annexation is a legislative function which cannot be delegated to the courts. The judicial function in cases like this is to make a factual determination as to whether the conditions prescribed by the legislature for annexation of territory have been met and, if it is found they have, to decree annexation, otherwise to deny it. We have no discretionary power to determine whether the proposal is good or bad, wise or unwise.

"City of Des Moines v. Lampart, supra, at page 1038 of 248 Iowa, page 724 of 82 N.W.2d, contains this statement which has been repeated several times: 'The court was not required to determine *how* capable plaintiff must be, nor *how* substantial must be the municipal services and benefits furnished—only whether there was an "affirmative showing" ' (emphasis not added).

"City of Cedar Rapids v. Cox, supra, at pages 950, 951 of 252 Iowa, page 255 of 108 N.W.2d, makes this statement which later decisions repeat with approval: 'The Legislature has not, and could not, under the Constitution delegate to courts the power to determine whether the proposed annexation is sound or unsound, good or bad. If the conditions prescribed by the Legislature have been met, the court must order annexation. If the conditions so prescribed have not been met, the court cannot order annexation.'

"The Cox opinion says of the statutory requirement that property may not be annexed for the sole purpose of increasing the city's tax revenue 'the fact that in the event of annexation the city's increased revenue may exceed its increased expense

will not alone defeat annexation' (page 960 of 252 Iowa, page 260 of 108 N.W.2d).

"Town of Coralville v. Great Lakes Pipe Line Co., supra at page 29 of 253 Iowa, page 379 of 110 N.W.2d observes, 'The issue is the capability of the municipal corporation and not the need of the property owner.' "

The burden is upon the municipality to prove by a preponderance of the evidence it is capable of furnishing to the area the required services and benefits and this question of capability is to be determined as of the time the annexation proceedings are initiated, here May 28, 1962, not at the time of trial in the fall of 1965. Cedar Falls case and citations at page 267 of 259 Iowa, pages 118, 119 of 144 N.W.2d.

III. Bettendorf adjoins the larger city of Davenport on the east. Approximately the north half of Davenport's east city limit also extends north two and a half miles from the center of Bettendorf's north line of about two miles. The Mississippi river flows west-southwest to form the south boundary of both cities and separates them from Rock Island and Moline, Illinois. East Moline adjoins Moline on the east, separated from the south-southeasterly line of the annexed area by the Mississippi. These two Iowa cities and the two in Illinois are often referred to as the Quad Cities.

The annexed area adjoins Bettendorf on the east and extends east approximately three miles. The north line of most of the area is 440 feet north of the north line of Bettendorf. The irregular south line of the annexed area is, from the west, the city of Bettendorf, the town of Riverdale (1960 population 477) and the Mississippi.

The accompanying plat taken from plaintiff's Exhibit A may help to visualize the physical situation.

It is apparent from the plat and what has been said that if Bettendorf is to enlarge it cannot go south because of the river nor west because of the larger city of Davenport. It must go either north-northeast, or east as it has done. Defendants say it would have been better for plaintiff to go north rather than east. However, as the trial court correctly observed, if the city is justified in enlarging its limits it is not

for the trial court or defendants to say in which direction it goes. As defendants apparently concede, selection of the adjoining territory to be annexed is a legislative matter for the city to determine.

"* * * neither the trial court nor this court has any discretion as to what should or should not be annexed." City of Cedar Rapids v. Cox, 252 Iowa 948, 950, 108 N.W.2d 253, 255, certiorari denied 368 U.S. 3, 82 S.Ct. 16, 7 L.Ed.2d 17.

IV. As before indicated, we are satisfied the city has made the required affirmative showing it was capable as of May 28, 1962, of extending into the annexed territory substantial municipal services and benefits not theretofore enjoyed. We will mention the principal ones.

The city had a well equipped and trained volunteer fire department of 20 men, including a chief who had served as such more than 30 years and three assistant chiefs. The newest members had served five years. All had received training in fire fighting at Iowa State University. During working hours six men were within two blocks of the fire station. The department has four motor vehicles, including two "pumpers" designed for use in areas without water mains. Fire calls are received 24 hours a day and go to both the fire and police personnel in seconds. The fire chief testified the department was capable on May 28, 1962, of extending to the annexed area the same services the city was then receiving. He would, however, add five or six men to the department, get a smaller, lighter truck to precede the heavier ones to a fire, and build a fire station in the area at an estimated cost of $40,000.

The annexed area had no city fire protection but was served by the Pleasant Valley Township Fire District which was capable of handling fires in the area. However it did not have a round-the-clock alarm system. The area had a Class 10 (the highest) fire insurance premium rate, with no accessible water mains or fire hydrants, as compared to the city's 5 to 6, and Davenport's 3 to 4, rate.

Bettendorf's ordinances required use of the best electrical wiring and prohibited use of wooden shingles. The area had no comparable protection.

On May 28, 1962, the city had a police force of eight trained men, two of whom were on simultaneous duty on shifts of eight hours, including a chief and sergeant, and four policewomen who were also on duty in eight-hour shifts. The women take all radio and phone calls, operate the radios and phones and relay the calls to the three fully equipped squad cars. These cars were in constant contact with each other and police in the other Quad Cities and surrounding sheriffs' departments. The squad cars patrol the city at least several times daily.

All members of the department are examined by the Civil Service Commission and have the benefit of a retirement system administered by a city-created board.

Bettendorf also had an auxiliary police force of 15 men equipped with a late model station wagon, and a boat for river

patrol in the summer, with chief, assistant chief, captain and 12 patrolmen, all under supervision of the chief of the regular force.

The police chief testified the annexed area could be given the same service as the city had and which the area had not theretofore enjoyed, but, to be safe, it would be necessary to buy another squad car for $2500 and employ two more patrolmen at a total annual cost of $12,000.

In May 1962 the county sheriff's office regularly patrolled the county, including the annexed area, but not more than once a week. The area had no other police protection.

The city's police department was located in its new city hall. It had two jail cells, four bunks, with a restroom and washbasin in each cell. If prisoners were kept there longer than overnight they were transferred to the county jail in Davenport.

Bettendorf had a board of park commissioners with a trained superintendent of parks and recreation, seven full-time employees and about 30 part-time seasonal ones. There were several parks and playground areas. One park had two tennis courts, horseshoe court, lighted softball diamond, little league diamond, shelter house with comfort station, and maintenance building. One playground area of five acres adjoined the community center building and had playground equipment and shelter house. Another park contained a little league baseball diamond, playground equipment and shelter house with restrooms. Still another park had playground equipment, picnic tables, fireplaces and grills. There was also a boat dock and launching area.

In May 1962 the city held an option on 57 acres for a park to be extensively improved under supervision of an engineering consultant who had been engaged, for football, baseball, tennis, ice skating, swimming and other activities. At the time of trial the 57 acres had been purchased and about 60 percent developed as planned.

Supervised recreation programs ran for eight weeks at three parks and two school buildings. Winter recreation programs were operated from October first through May in five locations. The superintendent of parks testified his staff was

capable of "programming" for residents of the annexed area and that activities in the present city limits would be available to them as the area was developed.

The superintendent knew of no municipal parks, recreation areas or programs in the area annexed. A county park about 14 miles from the area was opened in 1965 and the Riverdale school "gym" was open at times for adult type recreation such as basketball and volley ball.

Bettendorf's then new, modern public library was opened in 1960. In May 1962 it had a staff of six, plus a custodian and three pages. It was open 57 hours a week, including evenings until nine, except Fridays and Saturdays. It had 19,000 to 20,000 volumes, 145 periodicals, 400 to 450 recordings and about 100 reproductions of well-known paintings. Between 1962 and time of trial 7000 volumes were added. The library was free to residents of the city, not to nonresidents. The Bettendorf library is closer to the annexed area than any other city library.

The area had no library, but the county bookmobile made weekly stops there except in bad weather. Plaintiff's library has no bookmobile. The opinion of the president of its library board was that the annexed area could be served by its then facilities without a bookmobile.

Bettendorf had engaged an experienced planning consultant firm which prepared its master plan of development, zoning ordinances and revisions. A member of the firm long familiar with the city and annexed area and subdivision control testified zoning and other plans for the future adopted by Bettendorf would benefit the annexed area by allowing it to progress in a like planned manner. At one time the firm recommended expansion to the north but it was ultimately decided annexation of the area to the east was preferable, partly because the land adjoining the Mississippi was well suited for industrial purposes.

As pointed out in Division III, supra, selection of the area to be annexed was a legislative matter for the city, not the courts. The planning expert testified the annexed area was an environ of the city.

In May 1962 the city had electrical, plumbing and building codes regulating construction of buildings and installation of

electrical and plumbing facilities, with at least three trained inspectors to enforce the regulations. According to the building inspector his department was capable of extending its services into the annexed area which had no such codes.

Incidentally, in 1962 the city issued building permits for 186 new homes valued at over $2,309,000 and 17 apartments valued at nearly $363,000. In all, 700 permits were issued with a total valuation of $4,000,000. In May 1962 the city's population was about 12,000. By October 1965 this increased to 17,241.

Bettendorf had a sanitary sewer system. Its sewage is treated in Davenport's treatment plant under a contract between the two cities by which plaintiff purchased about 15 percent of the plant's capacity with provisions for it to negotiate for more. Plaintiff has been using about 70 percent of plant capacity it purchased and the contract has a remaining life of 15 years. The purchased capacity will treat sewage from 7000 to 8000 additional persons. The annexed area has no sewer system nor sewage disposal system.

Bettendorf has a department of public works with a registered engineer as director and five other persons. The street and sanitation department operates under a street commissioner and 18 employees with several more in the summertime. It collects and disposes of garbage and trash from each house, looks after street cleaning and flushing, snow removal, ice control and numerous related services. The annexed area had about 2.3 miles of paved street. They were U. S. primary highways 67 and former 67 which had been renumbered.

The director of public works testified his department was capable of immediately extending into the annexed area garbage collection from the 500 homes there and commercial and industrial sites needing it, the same examination and treatment of streets Bettendorf received, including snow removal, sewer construction and maintenance. As garbage removal from farm homes was requested the department would add three employees. Two more trucks and a cinder spreader would be necessary for the added service to the area. The spreader would cost about $1400. The added men would cost $15,000 a year and the two trucks about $4200 each. This witness also testified in substance the annexed area enjoyed virtually none of

these services except that the county provided maintenance and was equipped to remove snow on county roads.

The Davenport Water Company held a franchise under which it provided purified water to Bettendorf. The manager of the company testified he knew no reason why it could not serve the annexation with pure water and fire mains. If in the future a water tank were required he did not doubt the company would install it. The witness knew of no water system or fire hydrants in the annexed area.

There is also evidence the city can provide the annexed area with electricity and gas at franchise rates substantially below rates which prevailed in the area in May 1962.

Defendants argue that because the water supply of Bettendorf comes from the Mississippi and the river adjoins the annexed area they have the same capability to secure water as plaintiff does; that because Bettendorf has no sewage disposal plant but uses Davenport's, under contract with it, the capability to furnish sewers for the area is with Davenport, not plaintiff; and because plaintiff would levy a special assessment to pay for surfacing area streets, the only capability plaintiff has to surface streets is based on making such a levy.

The argument cannot be accepted and misconceives the effect of section 362.26, subsection 6. The matters suggested do not negate plaintiff's capability to extend into the area water, sewer or street improvements. Nor does the claimed fact the area might obtain these benefits from other sources or in a different manner negate the established fact they were not theretofore enjoyed by the area.

Defendants are mistaken in believing, if in fact they do, plaintiff must affirmatively show it will improve streets adjoining their property without cost to them. Cities are not charitable institutions and much of the cost of furnishing municipal services must ultimately be borne by general or special taxation of those benefited. Defendants are not entitled to preferential treatment in this respect over plaintiff's resident property owners at the time annexation was initiated.

Plaintiff made a detailed showing as to its unused taxing power in 1962 and its ability to issue bonds for such improvements as a second fire station and a sewage disposal plant if

either were found necessary or desirable. In 1962 only about 15 mills were levied for the city's seven functional funds out of a then statutory maximum of 30 mills. A mill levy produced in excess of $20,000. On May 28 the city's outstanding general obligation bonds totalled less than half its allowable debt limit. It had an "A" rating under the Moody rating service for municipalities and its bonds were readily salable.

V. Defendants assert the city has not affirmatively shown the "annexation will not result merely in increasing [its] revenue from taxation" as required by Code section 362.26, subsection 6, quoted at the outset hereof.

In this connection, we have held this statute "clearly implies, if it does not directly state, that an affirmative showing the municipality is capable of furnishing the area substantial municipal services and benefits not theretofore enjoyed warrants a finding the annexation will not result *merely* in increasing the municipality's revenue from taxation. [emphasis not added]

"Of course any annexation of unincorporated territory will result in an increase of revenue from taxation which may or may not exceed the increased expense of the services. * * * the fact the increased revenue may exceed the increased expense will not alone defeat annexation." (Citation) City of Cedar Falls v. Sieglaff, supra, 259 Iowa 263, 270, 144 N.W.2d 116, 120.

We have tried to point out in Division IV that plaintiff has shown its capability of furnishing to the area the services and benefits required by the statute.

Defendant's argument the annexation results merely in increasing plaintiff's tax revenue is largely based on the fact a generating station of Iowa-Illinois Gas and Electric Company, with assessed valuation somewhat more than $12,000,000, is located in the annexed area east of Riverdale. This is somewhat offset by the fact that about 77 percent of the entire area consists of agricultural tracts of more than 10 acres which may not be taxed for municipal purposes to exceed 1¼ mills. Code section 404.15.

It may be true that in selecting the area to be annexed the city considered the location of this generating plant and

the tax revenue to be obtained therefrom. Nothing in the statutes prohibits this. The city could not be expected to expand for the sole purpose of rendering services or benefits to the area.

In three recent precedents where annexation was approved a large industrial plant was located in the area. In City of Cedar Rapids v. Cox, supra, 252 Iowa 948, 961, 108 N.W.2d 253, 261, it was a large electric generating plant with estimated assessed valuation of some $5,600,000. In Town of Coralville v. Great Lakes Pipe Line Co., supra, 253 Iowa 23, 29, 110 N.W.2d 375, 379, it was a "tank farm" with 17 tanks for storing liquid petroleum products. In the Cedar Falls case, supra, a large manufacturer of farm implements maintained an experiment farm and research center in the area.

In the cited cases and here, as in most large industrial plants, some of the services plaintiff was capable of furnishing the area were furnished by the owner. Our decisions make it clear this is not a defense to a proceeding like this. "There is nothing in the statute requiring that a need for municipal services be shown." Cedar Rapids case. "The issue is the capability of the municipal corporation and not the need of the property owner." Coralville and Cedar Falls cases. It is significant that Iowa-Illinois Company has not appealed and apparently does not object, at least at this stage, to the annexation.

VI. Section 362.26 authorizes a city or town to annex "Unincorporated territory adjoining" it by proceeding as the statute provides. We find without merit defendants' contention the annexed area here does not adjoin the city.

Only factual basis for the contention, as shown by the accompanying plat, is that roughly the north half of Riverdale extends up into the west part of the annexed area. The maximum north-south dimension of this extended area is about one mile. However, west of this portion of Riverdale is a strip of annexed area about one mile long, north-south, and a half mile wide, east-west. Bettendorf and the annexed area have a common boundary of approximately two and a half miles (two miles north-south and a half mile east-west). The east end of

the east-west common boundary is about one mile north of the southwest corner of Riverdale.

Defendants concede the parts of the annexed area immediately east of the common boundary adjoin Bettendorf but argue the relatively smaller part east of the northeast boundary of Riverdale does not do so.

Where the municipality and the annexed territory have a common boundary of such length as we have here—more than two thirds of what it would be if Riverdale were unincorporated and included in the territory—we think the annexed area adjoins the municipality within the requirement of section 362.26.

With Davenport adjoining Bettendorf on the west and also, together with unincorporated territory not sought to be annexed, on the north, and the Mississippi on the south, it is obvious the city could adjoin the annexed area only along the city's east line.

Requirements that a city and annexed area be adjoining, contiguous or adjacent are common. The prevailing rule is that some tracts of the annexed area need not adjoin the city if some of them do and the tracts adjoin each other. Thus 62 C.J.S., Municipal Corporations, section 46c(1)(b), page 135, states:

"It is sufficient if the territory annexed constitutes one body of land which as a whole is adjacent or contiguous to the municipality, even though it is composed of different tracts owned by different persons and some of such tracts may not themselves be contiguous to the city. In other words, it is sufficient if all of the tracts are contiguous to each other and one of them adjoins or is contiguous to the city."

This from 37 Am.Jur., Municipal Corporations, section 27, page 645, is to like effect: "While the general rule is that land cannot be annexed to a city or town unless it is contiguous thereto, it is not necessary that each and every tract of land sought to be annexed shall be contiguous to the municipality. If all of the tracts are contiguous to each other, and one of them is contiguous to or adjoins the municipality, that is sufficient." To like effect is 2 McQuillin, Municipal Corporations, 1966 Revised Volume, section 7.20, page 365.

Page 39 of the 1967 cumulative supplement to 37 Am.Jur. contains this qualification of the rule just quoted: "Attempts to annex outlying territory to a municipality by the device of a connecting, narrow, shoestring strip of land are looked upon with disfavor by the courts." It cannot be claimed this statement applies here. See also 2 McQuillin, Municipal Corporations, 1966 Revised Volume, section 7.20, pages 367, 368.

Unquestionably the contention now considered would not avail if this proceeding did not involve the territory east of Riverdale. After annexation of the remaining area the city could certainly maintain a second proceeding to annex the part now claimed not to adjoin the city. As stated, these two tracts clearly adjoin each other. There seems to be no good reason why, under the record here, such an end result may not be attained in a single proceeding.

Somewhat in point is City of Ames v. Olson, 253 Iowa 983, 990–992, 114 N.W.2d 904, 908–910, which upholds jurisdiction to annex in a single proceeding separate areas not contiguous to each other but contiguous to the city. To like effect is State ex rel. Maury, County Farmers Co-op. Corp. v. City of Columbia, 210 Tenn. 657, 362 S.W.2d 219.

Westmoreland, Inc. v. Runyan, 15 Ill. App.2d 51, 145 N.E.2d 257, 258; Spaulding School District No. 58 v. City of Waukegan, 18 Ill.2d 526, 165 N.E.2d 283; Dabkowski v. Baumann, 175 Ohio St. 89, 191 N.E.2d 809, are among recent decisions which support our holding in this division.

VII. We are asked to tax costs of appeal to plaintiff, the successful party. However, we think the general rule that costs are taxed to the unsuccessful party is applicable.—Affirmed.

All JUSTICES concur except LEGRAND, J., who takes no part.