DICKINSON COUNTY, Iowa, Appellant,

v.

CITY DEVELOPMENT COMMITTEE,
Appellee.

VILLAGE LAKESHARES,
L.P., Appellant,

v.

CITY DEVELOPMENT BOARD and
Wahpeton City Development
Committee, Appellees.

No. 93–859.

Supreme Court of Iowa.

Sept. 21, 1994.

Daniel D. Dykstra of Eidsmoe, Heidman, Redmond, Fredregill, Patterson & Schatz, Sioux City, John D. Shors, Robert J. Douglas, and Diane M. Stahle of Davis, Hockenberg, Wine, Brown, Koehn & Shors, P.C., Des Moines, and Jon M. Martin, County Atty., for appellants.

Bonnie J. Campbell, Atty. Gen., and Christie J. Scase, Asst. Atty. Gen., for appellees.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and TERNUS, JJ.

LAVORATO, Justice.

Iowa Code chapter 368 (1991) governs involuntary annexation proceedings. One of the conditions for an involuntary annexation is that the annexing city will be able to provide the territory proposed for annexation "substantial municipal services and benefits not previously enjoyed by such territory." Iowa Code § 368.17(4). The decisive issue in this involuntary annexation proceeding is whether there was substantial evidence to support a finding that such condition was met. The district court thought so and upheld an approval for an involuntary annexation. We disagree and reverse.

The City of Wahpeton is located on the southwest shore of West Lake Okoboji in Dickinson County. Wahpeton is a resort community with no schools, little commercial development, and one city employee. Wahpeton boasts of 484 residents and currently includes 800 acres.

Wahpeton wishes to annex 425 acres of unincorporated Dickinson County land that is north of the city. Part of the 425 acres lies adjacent to West Lake Okoboji, and contains the Village West lake front resort which is owned by Village Lakeshares. The remainder of the 425 acres is undeveloped farmland that does not have lake access. About sixty-two people live in the territory proposed for annexation. The annexation would (1) result in a forty-eight percent increase in the taxable valuation of real property in Wahpeton from $71 million to $105 million and (2) generate an additional $50,528 in property tax revenue.

Wahpeton filed an involuntary annexation petition with the city development board in early March 1992. See Iowa Code § 368.11. The board approved the form of the petition and appointed Wahpeton residents to the statutorily mandated city development committee charged with deciding the fate of the annexation proposal. See Iowa Code § 368.14.

Pursuant to statute, the committee held a public hearing on the proposal in July 1992. See Iowa Code § 368.15. The committee reconvened in September in an open meeting to consider the proposal and ultimately voted to approve it. See Iowa Code §§ 368.16, 368.17. The committee issued a written decision in October. See Iowa Code § 368.19.

That decision set the stage for a special election on the proposed annexation. See id. Qualified electors in the annexing city and the territory proposed for annexation may vote in the election. See id. The proposed annexation is authorized if a majority of the total number of persons voting approves it. See id.

Following the committee's decision, the county and Village Lakeshares filed separate petitions for judicial review in the district court. See Iowa Code § 368.22. The district

court consolidated the petitions and later affirmed the committee's decision. It is from the district court's decision that the county and Village Lakeshares appeal.

Iowa Code section 368.22 governs our scope of review. That section provides that its provisions and those of Iowa Code chapter 17A (with certain exceptions not relevant here) are "the exclusive means by which a person or party who is aggrieved or adversely affected by agency action may seek judicial review of that agency action."

Our authority to review the decision of the district court is pursuant to Iowa Code section 17A.20, which provides that

[a]n aggrieved or adversely affected party to the judicial review proceeding may obtain a review of any final judgment of the district court under this chapter by appeal. The appeal shall be taken as in other civil cases, although the appeal may be taken regardless of the amount involved.

■ Section 368.22 limits our scope of review to—among other things—a question of whether the decision appealed from is "without substantial supporting evidence." Evidence is substantial when a reasonable mind could accept it as adequate to reach the same findings. *Norland v. Iowa Dep't of Job Serv.*, 412 N.W.2d 904, 913 (Iowa 1987).

■ When, under Iowa Code chapter 17A, we review a district court decision, we ask only whether the district court correctly applied the law. If our conclusions are the same as the district court's, we affirm. If our conclusions are different, reversal may be required. *City of Des Moines v. City Dev. Bd.*, 473 N.W.2d 197, 199 (Iowa 1991). Here we need only decide whether the district court correctly concluded there was substantial evidence in the whole record made before the committee to support the committee's decision approving the annexation.

I. A city development committee may not approve an annexation unless the committee

finds that the [annexing] city will be able to provide to the territory [proposed for annexation] substantial municipal services and benefits not previously enjoyed by such territory. . . .

Iowa Code § 368.17(4). By a 4–2 vote, the committee in this case found that the

City of Wahpeton can provide the territory proposed for annexation with customary services including police protection, fire protection, garbage pick-up, street lights, zoning process and snow removal.

The committee then concluded that based on this finding the City of Wahpeton

has proven that [it] will be able to provide the territory [proposed for annexation] substantial municipal services and benefits not previously enjoyed by such territory and approval of the proposal is not barred pursuant to Iowa Code section 368.17(4).

Preliminarily, we note that the county and Village Lakeshares challenge these findings and the conclusions as insufficient to satisfy the standard regarding the adequacy of findings set out in Iowa Code section 17A.16. Section 17A.16 requires findings of fact, if set forth in statutory language—as was done here—to be accompanied by "a concise and explicit statement of underlying facts supporting the findings."

■ We find no merit in this challenge. True, the committee's decision does not technically meet the requirements of section 17A.16. Nevertheless, we think the decision—when viewed in light of the whole record made before the committee—is "sufficiently certain to enable a reviewing court to ascertain with reasonable certainty the factual basis and legal principle upon which the administrative body acted." *Brekke v. Iowa State Bd. of Educ.*, 449 N.W.2d 345, 346–47 (Iowa 1989).

II. We therefore proceed to the fighting issue in this case: Did Wahpeton prove that it will be able to provide the territory proposed for annexation substantial municipal services and benefits not previously enjoyed by such territory? That question turns on whether there is substantial record evidence that the City of Wahpeton will be able to provide such services and benefits. The district court concluded there was such substantial evidence. For reasons that follow, we disagree.

■ Wahpeton alleged in its petition that it is capable of extending to the territory proposed for annexation substantial municipal services and benefits not previously enjoyed by such territory. Wahpeton has the burden to establish this fact question by a preponderance of the evidence. *See Town of Clive v. Colby,* 255 Iowa 483, 487, 121 N.W.2d 115, 117 (1963). The burden of proving such allegation requires an affirmative showing that Wahpeton is capable of furnishing such services and benefits. *See id.* And its capabilities to furnish such services and benefits must be determined as of the date when the annexation proceedings were instituted. *See id.*

■ We think the language "not previously enjoyed" in section 368.17(4) means what it says: The services and benefits Wahpeton proposes to provide were not previously enjoyed by the territory proposed for annexation. So—contrary to the committee's and board's contention—it is not enough for Wahpeton to simply prove it is able to provide municipal services and benefits. It must also prove the territory proposed for annexation *did not previously enjoy those services and benefits.*

■ On the other hand, it is true that a territory proposed for annexation cannot frustrate annexation by merely showing that it already enjoys some of the same services the annexing city proposes to extend. *See City of Cedar Falls v. Sieglaff,* 259 Iowa 263, 269, 144 N.W.2d 116, 120 (1966) (denial of proposed annexation would not be justified because a large industrial plant located in the area to be annexed had provided itself with some of the same services the annexing city was capable of furnishing). The key here is *substantial* services and benefits. If the same services and benefits the annexing city proposes to extend are substantially more in degree than what the territory proposed for annexation is enjoying, then the annexing city meets the "not previously enjoyed" requirement. *See City of Cedar Falls,* 259 Iowa at 269–70, 144 N.W.2d at 120 ("not previously enjoyed" requirement met where annexing city showed the services and benefits it would provide were substantially more than what territory proposed for annexation

was enjoying even though most of the services and benefits were the same).

Services at issue in this case include (a) fire protection, (b) civil defense, (c) sanitary sewer, (d) police protection, (e) garbage and solid waste removal, (f) water, (g) street maintenance, (h) zoning and development, (i) street lights, (j) ambulance services, (k) electrical utilities, and (*l*) professional staff. Examination of the record concerning each of these areas reveals that Wahpeton has not carried its burden of proof on the section 368.17(4) requirement that it can provide the territory proposed for annexation substantial municipal services and benefits not previously enjoyed by such territory.

A. *Fire protection.* Fire protection service to the territory proposed for annexation is currently provided by the Spirit Lake fire department. Wahpeton does not have a fire department, and would contract with the Milford fire department to provide services to the territory proposed for annexation. The county and Village Lakeshares presented testimony that the Milford fire department would have a slower response time to the territory proposed for annexation than the Spirit Lake fire department does. Wahpeton's representative on the committee stated for the record that he did not "see that there would be any difference at all in fire protection." Another committee member stated that "on fire protection, the services would not be any greater if as good."

B. *Civil defense.* The county currently provides civil defense services for Wahpeton and the territory proposed for annexation. Testimony of the county emergency management coordinator established there would be no change in this arrangement if annexation is approved.

C. *Sanitary sewer.* The Iowa Great Lakes Sanitary Sewer District serves both the territory proposed for annexation and Wahpeton. There would be no change in this arrangement if annexation is approved, a fact established through the testimony of Wahpeton's lawyer and a letter from a representative of the sewer district.

D. *Police protection.* The Dickinson County sheriff testified that Wahpeton and

the territory proposed for annexation contract for police protection with his office. He stated that the level of service each group was provided was the same. The December 1990 contract between the sheriff's office and Wahpeton is in evidence. A clause in this contract specifically states that Wahpeton is contracting for the same level of service delivered to unincorporated areas of the county.

E. *Garbage and solid waste removal.* Wahpeton and almost the entire territory proposed for annexation contract with the same independent company for garbage services. In evidence is a letter from the service provider stating that about ninety percent of the individual residents in the territory proposed for annexation currently contract for greater garbage removal services than Wahpeton does. The county has a recycling program; Wahpeton does not.

F. *Water.* The bulk of the territory proposed for annexation is served by the Osceola rural water district. Wahpeton has its own water system. Village West purchases some of its water from Wahpeton to facilitate Wahpeton's receipt of additional federal monies for its water station. Wahpeton does not plan to expand its water system to provide service to the entire territory proposed for annexation.

G. *Street maintenance.* The territory proposed for annexation currently receives road maintenance services from the county. The county has a five person engineering staff and a seventeen person maintenance staff. It provides for (1) snow and ice removal, (2) grading, (3) asphalt surfacing, (4) seal coating, and (5) traffic marking. County equipment is available to provide snow removal on a twenty-four hour emergency basis for plowing all paved roads. Included in this group is a mile and one-half of paved roads in the territory proposed for annexation. The county has a wide variety of equipment available at various locations to deliver the services it provides.

Wahpeton currently has one employee to provide these services. In the petition for involuntary annexation, Wahpeton stated it could provide street maintenance, snow removal, and future utility extension maintenance to the territory proposed for annexation, including the mile and one-half of paved road currently maintained by the county.

The Wahpeton city attorney stated that the city would (1) add a half-time person to its public works department to facilitate road maintenance, and (2) contract for any additional services needed. He also indicated that certain private roads would also be provided with snow removal if these property owners granted an easement for public access.

There was no showing as to which private roads were involved. There was no showing as to what equipment or contingency plans Wahpeton had for any maintenance of any roads. There was no showing as to what specifications, if any, private roads must meet before they could be maintained.

H. *Zoning and development.* The evidence reveals that the county has a pervasive land use and regulation system in place and that land use changes take place in an orderly fashion. The county has had a long-term land use plan in place since 1971. It has had a zoning ordinance in place since 1982. Both the plan and the ordinance are under ongoing review and have been amended several times since inception. The ordinance is enforced by a full-time zoning administrator. Zoning changes require (1) filing an application with the zoning office, (2) a public hearing after publication, (3) a recommendation by the zoning commission, and (4) a public hearing with the board of supervisors and a vote by that body. Oversight is administered by the county (1) zoning commission, (2) board of supervisors, and (3) board of adjustment.

Wahpeton, on the other hand, has a far less sophisticated and less efficient system.

I. *Street lights.* The land in the proposed annexation area is a mixture of three types of property with different lighting needs. Some of the land is farmland and has no need for street lights. Some of it is resort property, with adequate lighting already provided by the owner. The balance is residential property with private security lighting.

Nevertheless, Wahpeton indicates in the petition for involuntary annexation that it

intends to light city streets and has obtained an estimate from Iowa Electric for that purpose. The record is silent on the need for such lighting, and which streets would be included in the project.

J. *Ambulance services.* The proposed annexation area receives services coordinated through the county. Wahpeton provides no ambulance services.

K. *Electrical utilities.* The territory proposed for annexation and Wahpeton are served by Iowa Electric. Wahpeton has no municipal utilities and admits there would be no change in electrical service.

L. *Professional staff.* The proposed annexation area has access to a variety of county employees who testified at the hearing and whose offices are open year round. Wahpeton employs one individual part-time from June through August.

The record when viewed as a whole clearly shows that Wahpeton falls far short in its evidentiary burden. It has not established that it can provide the territory proposed for annexation with substantial municipal services and benefits not previously enjoyed by such territory. One committee member accurately and succinctly described this failure in proof this way:

> I move that the City of Wahpeton will not be able to provide substantial municipal services not previously enjoyed by [the territory proposed for annexation]. And my reason for that is on fire protection, the services would not be any greater if as good. It would take longer for the Milford fire department to get there. On civil defense there is no difference, the services are the same. Sanitary sewer the same. Police protection they both use the same, no added service. Garbage and solid waste the area to be annexed served by the Iowa Great Lakes Sanitary Sewer District and Mr. Montgomery stated they were to remain the same. The county's way is charge, Wahpeton's would be through taxes. Water remains the same. Street maintenance, the county does not maintain the private roads, they only maintain public roads. They could not be taken as public roads until upgraded. The City of Wahpeton says they will maintain them and plow them if they can get an easement. But I believe they also will have to put them up to grade first. No indication of how this would be paid for or the kind of manpower and type of equipment available. Street lights, both served by the same company. Wahpeton will provide additional street lights at no cost. Probably very few needed. Ambulance service is the same. Zoning, the Dickinson County zoning is much more diversified, they cover many more areas of concern. Wahpeton's zoning does not take in near as many scenarios.

Significantly, the committee itself was not sure that Wahpeton had met its burden of proof on the issue. The vote on the above motion was 3–3. It was only after the Wahpeton representative stated that one council seat would be added for the territory proposed for annexation did the vote change to 4–2 in favor of Wahpeton. Two members voted in favor of Wahpeton because they felt the issue was so close they wanted the voters to decide it.

Because we conclude that the committee's order for involuntary annexation is unsupported by substantial evidence, we reverse the district court order affirming the annexation.

**REVERSED.**